238 N.J. Super. 288 (1989)
569 A.2d 854
ADOLPH AND JILL DELBRIDGE, PLAINTIFFS,
v.
OFFICE OF THE PUBLIC DEFENDER, LAW GUARDIAN PROGRAM AND THOMAS HARTLEY, ESQ., ET AL, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided January 23, 1989.
*291 Adolph Delbridge and Jill Delbridge, plaintiffs, pro se.
Diana Johnston for defendants (Alfred A. Slocum, Public Defender/Public Advocate, attorney; Diana Johnston on the brief; Thomas S. Smith of counsel).
VILLANUEVA, J.S.C.
Plaintiffs allege that defendants conspired to deprive plaintiffs of their constitutional and civil rights and children by committing the following torts:

*292 1. Abuse. 2. Acted as an Accessory. 3. Acted as an Accomplice. 4. Acted as an Advocate for DYFS, while depriving his clients and plaintiffs or rights. 5. Battery. 6. Colomny. 7. Breach of Peace. 8. Colusions. 9. Connivances. 10. Concealments Illegally. 11. Conspiracy. 12. Deceits. 13. Defamations. 14. Defrauds. 15. Defaults. 16. Discriminations. 17. Disfranchises. 18. Duresses  Trying to force plaintiff to admit to something he did not do, with threats. 19. Deprived and deceited plaintiffs of due-process rights. 20. Deprived plaintiffs of equal protection of law and rights by frauds. 21. Extortions. 22. Frauds. 23. False Representations. 24. False Pretenses. 25. Infractions unlawfully. 26. Infringements of plaintiff's rights. 27. Illegal intent. 28. Malfeasances. 29. Malice. 30. Malicious Prosecutions. 31. Misfeasances. 32. Misrepresentations. 33. Legal Malpractice. 34. Unlawful Motives. 35. Non-feasances. 36. Turpitudes. 37. Besides the violations of the statutes and rights....
Defendants move for summary judgment to dismiss the complaints against them or, in the alternative, to dismiss the complaints for failure to state a claim upon which relief can be granted.
The issues involved are (1) whether the Office of the Public Defender, Law Guardian Program and its assistant deputy public defender have absolute immunity from suit by aggrieved parents whose children were placed with DYFS; (2) whether designated (pool) attorneys have absolute or qualified immunity from suit by their clients; (3) whether plaintiffs' complaints, including allegations of legal malpractice and conspiracy, against their pro bono attorneys set forth claims upon which relief can be granted; and (4) whether designated (pool) attorneys are "public employees" within the meaning of the Tort Claims Act, N.J.S.A. 59:1-3, and thereby entitled to indemnification by the State.
The court holds that both the law guardian program and its law guardian have absolute immunity from suit because they are court officers exercising judicial functions. Designated (pool) attorneys have immunity from suit except for legal malpractice, conspiracy or other intentional misconduct. They are "public employees" subject to provisions of the Tort Claims Act, and therefore, entitled to indemnification by the State. Plaintiffs' complaints alleging legal malpractice against their pro bono attorneys do not set forth claims upon which relief *293 can be granted. Plaintiffs' complaints against their court-appointed attorneys alleging a common law and civil rights conspiracy without setting forth any overt act are merely conclusory, and therefore, fail to state claims upon which relief can be granted.
Plaintiffs, Adolph and Jill Delbridge, filed six complaints[1] against the Office of the Public Defender, Law Guardian Program, an attorney with the law guardian program and two attorneys who served as designated counsel for plaintiffs, numbered as follows:
1. Thomas Hartley and the Office of the Public Defendant, Law Guardian Program.
2. Thomas Hartley.
3. Thomas Hartley.
4. Thomas Hartley and Office of the Public Defender, Law Guardian Program.
5. Jill Delbridge v. Joseph Contaldi.
6. Adolph Delbridge v. Joseph Apicella.
Defendant, Office of the Public Defender, Law Guardian Program is charged with the responsibility of acting as law guardian to children in child abuse or neglect proceedings. The law guardian is appointed by the court. N.J.S.A. 9:6-8.23. The parents, if indigent, enjoy the right to appointment of counsel for these proceedings. N.J.S.A. 9:6-8.23, -8.43.
Plaintiffs' seven children were removed from their home in Hudson County, pursuant to statute and court order, in the matters of which they complain, for reasons of child neglect and abuse.
*294 In those proceedings, Thomas Hartley, an Assistant Deputy Public Defender with the Law Guardian Program of the Office of the Public Defender represented the interests of the children. Adolph and Jill Delbridge, as indigents, each had counsel appointed through the Office of the Public Defender for these proceedings. Because a conflict of interest would arise if staff attorneys represented plaintiffs, attorneys were appointed by the Public Defender, Alfred A. Slocum, through Hudson County Regional Office, from a list of designated counsel (or pool attorneys) pursuant to specific statutory authority. N.J.S.A. 2A:158A-9. Joseph Apicella was appointed to represent Adolph Delbridge, and Joseph Contaldi was appointed to represent Jill Delbridge.
The four complaints against the Office of the Public Defender, Law Guardian Program, and Thomas Hartley fall into two categories: the first two concern the removal of five children from plaintiffs' home on or about January 25, 1985. Plaintiffs allege that the law guardian program, in spite of their complaints, failed to supervise and otherwise insure that Thomas Hartley did his job properly. As to Hartley, these two complaints allege, inter alia, that, he violated the constitutional and civil rights of plaintiffs and their children, apparently, on equal protection grounds because plaintiffs are an interracial couple; he violated the attorneys' and prosecutors' code of conduct and state laws; he failed to properly represent the children; and he conspired with DYFS and the Attorney General against plaintiffs by suppressing evidence, perjury, malice and malicious prosecution. Hartley is also alleged to have kept plaintiffs' children from them and to have placed them up for adoption.
The third and fourth complaints against the law guardian program and Hartley concern the removal from plaintiffs' home of their seventh child on December 10, 1987, and subsequent events. Again, plaintiffs allege that the law guardian program failed to supervise Hartley and that Hartley violated the constitutional and civil rights of plaintiffs and their child. They also *295 allege that their children were neglected in foster care and that Hartley kept this information from plaintiffs. The same allegations concerning malicious prosecution and conspiracy, etc., are made against Hartley in the second two complaints as were made in the first two complaints.
Damages in the millions are sought from both defendants for "mental and physical harm" because plaintiffs have been deprived of "children, home, relationship and proper court relationship."
The last two complaints were filed against Joseph Contaldi, who represented Jill Delbridge, and Joseph Apicella, who represented Adolph Delbridge in the underlying child abuse/neglect proceedings. These complaints, which are virtually identical, allege that counsel conspired with the court and DYFS to protect the court and DYFS. They also allege improper representation and intentional legal malpractice. Unspecified damages are sought against each defendant because plaintiffs "suffered damages, losses and deprivation."
In response to defendants' motion to amend answers, plaintiffs filed a response in which they invoke, as to defendant Hartley, 42 U.S.C.A. § 1983 and as to defendants Apicella and Contaldi, 42 U.S.C.A. §§ 1983, 1985 and 1986 and 18 U.S.C.A. §§ 241-242.
A brief review of the underlying proceedings which form the basis of the Delbridge complaints is necessary for an understanding of the instant matters.
On January 25, 1985, the Attorney General, on behalf of the Division of Youth and Family Services (DYFS), filed a complaint in Superior Court, pursuant to N.J.S.A. 30:4C-12 and 9:6-8.21 et seq., concerning the protection of the five children of Adolph and Jill Delbridge. On the same day, the court ordered the removal of the children from plaintiffs' home and placed them in the custody of DYFS. In the same order, the court appointed the Public Defender as law guardian for the children.
*296 Adolph Delbridge, on April 10, 1985 pled guilty to one count of an indictment charging him with a violation of N.J.S.A. 2C:24-4, endangering the welfare of one of his children.
Fact-finding hearings were held before Judge Hornstein to determine whether the children were abused or neglected by either or both parents. In an opinion dated October 23, 1986, Judge Hornstein found that plaintiffs' five children were neglected and abused within the meaning of N.J.S.A. 9:6-8.21c. and set the matter down for a dispositional hearing. The sixth child of the Delbridges became the subject of a DYFS protection complaint in November 1986 and on December 17, 1986, the child was placed in the custody of DYFS. That matter was consolidated with the original proceeding. On April 20, 1987, DYFS filed a complaint seeking termination of the parental rights of Adolph and Jill Delbridge. The law guardian program does not represent children in termination proceedings; however, Hartley continued as law guardian for the six children at the court's request until a guardian was appointed for the termination proceedings. The representation of plaintiffs by Apicella and Contaldi ended in June 1987 when the complaint was filed to terminate parental rights. The Department of the Public Advocate, Office of the Public Defender, does not represent parents in termination proceedings; rather, representation is provided by the private bar.
Upon DYFS's complaint, Judge Hornstein ordered the seventh child of Adolph and Jill Delbridge removed from their home in December 1987, and custody of the child was placed with DYFS. Hartley was assigned by the court to represent this child, who has now been returned to plaintiffs' custody.
Plaintiffs herein, in a collateral attack of these underlying proceedings, have filed other complaints alleging serious violations of plaintiffs' rights against a multitude of defendants, including Governor Thomas Kean, Attorney General Cary Edwards, three Hudson County judges, DYFS, attorneys, physicians, police and many other persons.

*297 PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM ARGUING THE MERITS AND/OR EFFICACY OF THE DECISION TO REMOVE THEIR CHILDREN.
Plaintiffs' response to this motion contains extensive reference to the underlying protective services and guardianship proceedings conducted pursuant to Title 9 and Title 30 before Judge Hornstein, which cannot be used to relitigate, in this forum, the outcome of the earlier proceedings which found Adolph and Jill Delbridge responsible for neglecting and abusing their six children and which ultimately terminated their parental rights.
The doctrine of collateral estoppel applies, and reconsideration in this case of the multitude of facts now presented by plaintiffs is legally impermissible. Collateral estoppel precludes a party from relitigating facts which that party actually litigated (or could have litigated) in an earlier proceeding and which were determined by a court having jurisdiction of the matter. Mazzilli v. Accident, etc., Casualty Ins. Co., 26 N.J. 307, 314-316, 139 A.2d 741 (1958); United Rental Equipment Co. v. Aetna Life and Cas. Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977). In United Rental, the Court quoting from the Restatement, Judgments 2d, § 88, stated:
A party precluded from relitigating an issue with an opposing party, [under the principle of res judicata], is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. [74 N.J. at 101, 376 A.2d 1183]
Plaintiffs have submitted voluminous "facts" and attached numerous documents to their brief, all of which concern the underlying proceedings. For example, the psychological and sociological evaluations of plaintiffs have been submitted to the court. Essentially, they have asked this court to review those and other documents and make a finding that the removal of their children from their home, as well as the family court determinations, were defective. Plaintiffs deny this by alleging they are suing based upon the lies and conspiracy of defendants. *298 Such a review can be pursued only in the Appellate Division.[2] Plaintiffs had a "full and fair opportunity" to litigate those facts and issues in the earlier proceedings. Conservation of judicial resources and finality of judgments mandate that the doctrine of collateral estoppel be invoked.

DEFENDANTS, OFFICE OF THE PUBLIC DEFENDER, LAW GUARDIAN PROGRAM AND THOMAS HARTLEY OWED NO DUTY TO PLAINTIFFS NOR CAN PLAINTIFFS RAISE ALLEGED DEPRIVATION OF THEIR CHILDREN'S RIGHTS OR SUE ON THEIR BEHALF.
Thomas Hartley and the law guardian program were appointed by the court to represent the best interests of plaintiffs' children. N.J.S.A. 9:6-8.43. They owed no duty to plaintiffs since their sole legal responsibility was to the children. There can be no tort liability where there is no duty of care owed to the plaintiff. Prosser and Keeton, The Law of Torts (5 ed. 1984), § 53; Strachan v. John F. Kennedy Memorial Hospital, 209 N.J. Super. 300, 315-316, 507 A.2d 718 (App.Div. 1986).
Plaintiffs allege in complaint no. 1 that defendants, Hartley and the law guardian program violated their children's civil and constitutional rights. In other complaints, plaintiffs allege that these defendants did not fulfill their duties to protect the children or represent their interests. By virtue of the orders of Judge Hornstein plaintiffs did not, at the time of these alleged deprivations, have control or custody of their children; rather, DYFS had sole control and responsibility. Plaintiffs may not raise allegations or obtain relief as to their children. The rules of court require that children must be represented in a lawsuit by a guardian ad litem appointed by the court. R. 4:26-2(a) Implicit in the rule is a requirement that *299 the proposed guardian certify that he has no interest in the litigation (or a conflict of interest). R. 4:26-2(b)(2).
A clear conflict of interest was present in the prior proceedings as the children had been removed from parental custody due to a finding of child abuse and neglect by plaintiffs. Thus, plaintiffs cannot maintain a lawsuit on behalf of their children.
Therefore, the complaints to the extent plaintiffs seek relief on behalf of the children are dismissed with prejudice.

DEFENDANTS, LAW GUARDIAN PROGRAM AND THOMAS HARTLEY HAVE ABSOLUTE IMMUNITY FROM SUIT.
Plaintiffs allege in the complaints and certifications, in the broadest conclusory terms, that defendant Thomas Hartley failed in his duty as law guardian and that he conspired with the court, DYFS and unnamed others to deprive plaintiffs of their children. Plaintiffs further allege malicious prosecution, perjury, malice and discrimination. As against the Office of the Public Defender, Law Guardian Program, plaintiffs apparently allege improper supervision.
Judges acting within the scope of their official duties are absolutely immune from liability for damages under 42 U.S.C.A. § 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Similarly, quasi-judicial officials acting within the scope of their official duties are absolutely immune. See, e.g., Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (state prosecuting attorney); Bauers v. Heisel, 361 F.2d 581 (3 Cir.1966), cert. den. 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967) (parole board members); Bethea v. Reid, 445 F.2d 1163 (3 Cir.1971) (assistant U.S. Attorney); Brown v. Joseph, 463 F.2d 1046 (3 Cir.1972) (county public defender).
Both of these defendants have absolute immunity from suit. The Office of the Public Defender, Law Guardian Program *300 was appointed by the court, Judge Hornstein, to act as the attorney for the children pursuant to N.J.S.A. 9:6-8.43. Thomas Hartley was assigned the responsibility by the office. In light of this delegation of responsibility, both defendants are cloaked with the long-standing immunity afforded judges by state and federal law. The New Jersey Supreme Court in Cashen v. Spann, 66 N.J. 541, 334 A.2d 8 (1975), cert. den. 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975), on remand 143 N.J. Super. 560, 364 A.2d 21 (Law Div. 1976), aff'd on other grounds 150 N.J. Super. 500, 376 A.2d 186 (App.Div. 1977), rev'd on other grounds 77 N.J. 138, 389 A.2d 969 (1978), discussed the question of judicial immunity, citing a long line of authority beginning in 1818 which has afforded judges absolute immunity in the discharge of their duties. Judges and other public officials enjoy judicial immunity to a federal civil rights action claim for money damages in an action arising out of a custody dispute. 42 U.S.C.A. § 1983. DiRuggiero v. Rodgers, 743 F.2d 1009 (3 Cir.1984). This has been so for fundamental reasons which go to the heart of our system of government. The Cashen court quoted Little v. Moore, 4 N.J.L. 84, 85 (Sup.Ct. 1818), to explain those reasons:
It is a principle which lies at the very foundation of a free, vigorous and independent administration of justice. It may be traced from the earliest periods of our judicial history down to the present day. * * * Indeed, were we to subject the judges of the established courts of justice to private prosecutions whenever the passions or resentments of disappointed suitors might dictate that measure, we should subdue their independence and destroy their authority. [Cashen v. Spann, supra, 66 N.J. at 545-546, 334 A.2d 8.]
The Cashen Court also noted that court officers exercising judicial functions are absolutely immune. In O'Regan v. Schermerhorn, 25 N.J. Misc. 1, 50 A.2d 10 (Sup.Ct. 1946), the court held that a grand jury, at common law, acts as an arm of the court and enjoys the same immunities as the court. So long as a judicial officer has jurisdiction of the parties, the immunity is absolute, even if there are allegations of malice or corruption. 25 N.J. Misc. at 19-20, 50 A.2d at 20-21.
*301 There is no doubt that in the instant matter the Office of the Public Defender, Law Guardian Program and Thomas Hartley were officers of the court, having been appointed by Judge Hornstein to represent the interests of the Delbridge children.
Although there are no reported New Jersey cases on this issue, two federal circuit courts of appeal have specifically addressed the question of the application of judicial immunity to law guardians. In re Scott County Master Docket, 618 F. Supp. 1534, 1570-1572 (D.C.Minn. 1985), aff'd Myers v. Morris, 810 F.2d 1437, 1465-1468 (8 Cir.1987); Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6 Cir.1984). In both cases, the court found that law guardians should be granted absolute judicial immunity because they are an integral part of the judicial process. Myers v. Morris, supra, 810 F.2d at 1458; Kurzawa v. Mueller, supra at 1465.
It should be noted that the Scott County procedure for the appointment of guardians is similar to that in New Jersey, i.e., the statute requires the court to appoint a guardian to protect the best interests of the child in neglect proceedings. Scott County, supra, 618 F. Supp. at 1573. As with other decisions on judicial immunity, allegations of malicious prosecution or conspiracy are defeated by the immunity. Ibid. O'Regan, supra, 25 N.J. Misc. at 20-21, 50 A.2d at 21-22.
While the jurisdictional statute in both cases was 42 U.S.C.A. § 1983, the rationale for according judicial immunity to guardians is in accord with New Jersey law as set out in Cashen and O'Regan. Those integrally related to the judicial process should not be subject to "private prosecutions whenever the passions or resentments of disappointed suitors might dictate...." To do so would interfere with "their independence and destroy their authority." Little v. Moore, supra, 4 N.J.L. at 86. The rationale advanced in Scott County is identical.
Clearly, the Office of the Public Defender and Thomas Hartley, as law guardians, in representing the best interests of the Delbridge children, were acting as an integral part of the *302 judicial process, and public policy dictates that they be free to act independently and vigorously without fear of reprisal at the hands of aggrieved parents. Thus, both are cloaked with absolute judicial immunity.

THE COMPLAINTS MUST BE DISMISSED AS TO DEFENDANT, OFFICE OF THE PUBLIC DEFENDER, BECAUSE PLAINTIFFS HAVE NOT COMPLIED WITH THE MANDATORY NOTICE REQUIREMENTS OF THE TORT CLAIMS ACT.
"No action shall be brought against a public entity under [the New Jersey Tort Claims Act] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3. "A claim relating to a cause of action for ... injury to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8-8. "The claimant shall be forever barred from recovering against a public entity if: (a) He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9...." N.J.S.A. 59:8-8(a). N.J.S.A. 59:8-9 provides that a claimant who does not file a timely notice of claim "may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially prejudiced thereby."
According to plaintiffs' complaint no. 1, their cause of action arose by January 25, 1985, or in any event, no later than October 23, 1986, when Judge Hornstein, after a number of hearings, entered his memorandum-opinion finding that plaintiffs had neglected and abused their children. To file against the State, one must file the claim "either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission." N.J.S.A. 59:8-7. Plaintiffs filed *303 what they refer to as a "Notice of Claim" with the Department of the Public Advocate and the Attorney General's office on March 21, 1988, well after the time permitted by law. Since more than 90 days have passed since the accrual of their cause of action (at the latest, October 23, 1986), they can no longer file a claim against the Office of the Public Defender. N.J.S.A. 59:8-8. Because more than one year has passed since the accrual of their cause of action, they cannot seek leave of court to file a late notice of claim. N.J.S.A. 59:8-9.

THE TORT CLAIMS ACT, N.J.S.A. 59:2-3(b) AND:3-2(b), PROVIDES IMMUNITY TO DEFENDANTS, OFFICE OF THE PUBLIC DEFENDER, LAW GUARDIAN PROGRAM AND THOMAS HARTLEY.
The Tort Claims Act provides public employees any immunity granted them at common law. N.J.S.A. 59:3-1. They are also protected by another provision of the act, which states:
A public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature. [N.J.S.A. 59:3-2(b)]
The statutory counterpart for public entities is N.J.S.A. 59:2-3(b).
The question, then, is, whether the activities of these two defendants in representing the children of the Delbridges in child abuse and neglect proceedings are encompassed by N.J.S.A. 59:3-2(b) and:2-3(b).
Law guardians, because they are appointed by the court to protect the best interests of children, are an integral part of the judicial system, and therefore, entitled to absolute judicial immunity. Since child abuse and neglect proceedings are judicial actions, the law guardian's representation in those proceedings is encompassed by the immunity afforded in N.J.S.A. 59:3-2(b).
There are no New Jersey cases concerning defenses of a law guardian under the Tort Claims Act. The few cases which have *304 considered N.J.S.A. 59:3-2(b), and its counterpart,:2-3(b), support such an immunity. Fair v. County of Bergen, 151 N.J. Super. 520, 377 A.2d 700 (App.Div. 1977), like the instant case, was a lawsuit which was brought because of events that occurred in a prior lawsuit. The county and the State were sued when a court attendant mistakenly delivered papers not in evidence to the jury. The Appellate Division found that the attendant was acting as the court's appendage in the execution of its powers and, therefore, the public entity was immune under N.J.S.A. 59:2-3(b). Likewise, the law guardian was acting pursuant to the court's powers to insure that the best interests of the child are protected.
... [T]he judicial approach should be "whether an immunity applies and if not, should liability attach. ..." It was hopefully contemplated that "in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities." [151 N.J. Super. at 523, 377 A.2d 700]
A lawsuit by aggrieved parents against the law guardians who were representing the children in their professional capacity is unique and novel.
The public entity, Office of the Public Defender, is not liable if its employee is not liable. N.J.S.A. 59:2-2(b); therefore, if Hartley is not liable pursuant to N.J.S.A. 59:3-2(b), neither is the office. Of course, the office enjoys its own immunity under N.J.S.A. 59:2-3(b).
The immunity provided by N.J.S.A. 59:3-2(b) is qualified by -14 which states that when a public employee's "conduct is outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct," liability may attach. Plaintiffs allege that defendant Hartley acted with malice, committed perjury and engaged in willful misconduct and malicious prosecution. This litany is totally unsupported by any material fact or act, so far as the children are concerned. Further, defendant Hartley never had a prosecutorial role in the underlying proceedings so that such an allegation is baseless; rather, he was an adversary. Since the children were *305 removed from the custody of plaintiffs by court order after proceedings initiated by others, not by Hartley, and there are no material facts to support a conclusion that Hartley acted outside the scope of his employment, N.J.S.A. 59:3-14 is applicable herein.
In Timber Properties, Inc. v. Chester Tp., 205 N.J. Super. 273, 286, 500 A.2d 757 (Law Div. 1984), the court concluded that N.J.S.A. 59:3-14 did not impose any liability upon a public employee, and for liability to attach it must be found outside that provision. The court reasoned that with regard to intentional torts the act "retains whatever liabilities and immunities a public employee would have had at common law." Id. at 287, 500 A.2d 757. At issue in Timber was the liability of municipal legislators for a zoning decision. The court found them to be absolutely immune at common law and granted summary judgment to them. Timber was cited with approval by the Supreme Court in Rochinsky v. State of N.J., Dept. of Transportation, 110 N.J. 399, 541 A.2d 1029 (1988) for the proposition that "common-law and statutory immunities not contained in the Act can prevail over the Act's liability provisions." Id. at 409, 541 A.2d 1029.
In this instance, Hartley enjoys absolute judicial immunity, and therefore, N.J.S.A. 59:3-14 alone cannot impose liability.

IMPROPER SUPERVISION BY THE OFFICE OF THE PUBLIC DEFENDER DOES NOT SUPPORT A CONSTITUTIONAL CLAIM UNDER THE CIVIL RIGHTS ACT.
The relief plaintiffs seek against the Office of the Public Defender under the Civil Rights Act is based upon the theory of improper supervision. The Supreme Court in Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) specifically addressed the question of the liability of public defender offices under § 1983. The Court noted that § 1983 "will not support a claim based on a respondeat superior theory of liability. Monell v. New York City Dept. of Social *306 Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611, 638 (1978)." Polk County v. Dodson, supra, 454 U.S. at 325, 102 S.Ct. at 453. Plaintiffs here make no factual allegations with regard to the Office of the Public Defender; they apparently believe the office was negligent in its supervision. Both Monell and Polk hold that § 1983 will not support such an action. Moreover, a general allegation of administrative negligence will not state a constitutional claim under § 1983. Rizzo v. Goode, 423 U.S. 362, 370-377, 96 S.Ct. 598, 603-607, 46 L.Ed.2d 561, 568-573 (1976).

THE OFFICE OF THE PUBLIC DEFENDER, LAW GUARDIAN PROGRAM IS NOT A "PERSON" WITHIN THE MEANING OF 42 U.S.C.A. § 1983.
42 U.S.C.A. § 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
A defendant, to be liable within the meaning of the statute must be a "person." In Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court held that states are not subject to the jurisdiction of federal courts in a § 1983 action because of the Eleventh Amendment. In so holding, the Court noted that Congress did not intend to waive the states' sovereign immunity by enacting § 1983. 440 U.S. at 367, 99 S.Ct. at 1158. Further, the Court implied that a state is not a "person" for purposes of § 1983. Id., 440 U.S. at 350, 99 S.Ct. at 1150 (Brennan, J. concurring); see also Bailey v. Ohio State University, 487 F. Supp. 601, 603 (S.D.Ohio 1980) (the state is not a person under § 1983).
In addressing this issue, the New Jersey Supreme Court recently followed the majority of the states in holding that neither a state nor its alter ego is a person for purposes of § 1983 regardless of whether the action is brought in state or *307 federal court. Fuchilla v. Layman, 109 N.J. 319, 537 A.2d 652 (1988). Thus, "if a governmental entity enjoys immunity as the state or its alter ego under the Eleventh Amendment, it cannot be liable as a `person' under section 1983." Id. at 324, 537 A.2d 652, citing Kovats v. Rutgers, 633 F. Supp. 1469, 1477 (D.N.J. 1986).
The Office of the Public Defender is a division within the Department of the Public Advocate of the State of New Jersey, established pursuant to N.J.S.A. 2A:158A-3. In child abuse cases the court is required to appoint a law guardian for the child. N.J.S.A. 9:6-8.23. That law guardian must be an attorney regularly employed by the Department of the Public Advocate. However, the Public Advocate may, by regulations, provide that certain classes of cases can be handled by the Office of the Public Defender, as was done in these cases. N.J.S.A. 9:6-8.21(d).
Although plaintiffs did not allege § 1983 violations in their complaints against the Office of the Public Defender, Law Guardian Program, any alleged § 1983 violations against the Office of the Public Defender, Law Guardian Program fail to state a cause of action upon which relief can be granted.

DEFENDANTS, APICELLA AND CONTALDI, HAVE IMMUNITY FROM SUIT AT COMMON LAW AND UNDER THE TORT CLAIMS ACT, EXCEPT FOR LEGAL MALPRACTICE, CONSPIRACY OR OTHER INTENTIONAL MISCONDUCT.

A. Public policy considerations for absolute immunity of public defenders.
The parental right to appointment of counsel in child abuse and neglect cases was established in Crist v. N.J. Div. of Youth and Family Services, 128 N.J. Super. 402, 302 A.2d 203 (Law Div. 1974), rev'd on other grounds 135 N.J. Super. 573, 343 A.2d 815 (App.Div. 1975). In 1974, the Legislature enacted N.J.S.A. 9:6-8.21 et seq., which provides for the appointment of counsel *308 to indigent parents and assigned the responsibility for that appointment to the Office of the Public Defender.
The Crist decision rests on the proposition that the possible loss of custody of one's children through a neglect/custody proceeding brought by the State is a potential deprivation of great magnitude and that parents without counsel are often ill equipped to match the power of the State. The reasoning is the same as that used in establishing the right to counsel for indigent criminal defendants. The assignment of counsel is made through the Office of the Public Defender. N.J.S.A. 2A:158A-9. In the statutory scheme establishing the office, the Legislature mandated that the Public Defender must employ both professional staff and trial pool. The latter were to assist the Public Defender where special experience or skills were needed or the caseload demanded or a conflict of interest existed. In this case, designated (pool) counsel were retained pursuant to N.J.S.A. 2A:158A-9 to avoid a conflict of interest or the appearance of one.
Apicella and Contaldi urge that they be afforded absolute immunity from damage claims based on the public policy considerations enunciated in the federal cases. Defendants named in plaintiffs' complaints include parties as diverse as the Governor, three Hudson County judges, the Attorney General and others, most of whom claim[3] to enjoy immunity by virtue of statutory or decisional law. Defendants urge that to permit this matter to go forward to discovery and trial as to only those appointed to represent indigent clients, e.g., the Delbridges, would make a mockery of the system and, most surely, discourage attorneys from representing clients involved in a most critical and important area, i.e., child-abuse and child-neglect cases.
*309 As with law guardians, the defenses available to designated counsel representing parents in child abuse and neglect proceedings is a matter of first impression. No New Jersey decisional law exists to serve either as a guide or as precedent. Therefore, the court must look to federal law, which is well developed, on the question of immunity of public defenders and court-appointed counsel.
The Third Circuit Court of Appeals in 1972 considered whether public defenders should be afforded immunity in Brown v. Joseph, 463 F.2d 1046 (3 Cir.1972), cert. den. 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973), some nine years after the United States Supreme Court declared that an indigent criminal defendant had a right to counsel "at every step in the proceedings against [them]." Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In Brown, the court held that a public defender enjoys immunity from liability in a suit under the Civil Rights Act, 42 U.S.C.A. § 1983. The court reasoned that immunity already granted to state judges and prosecutors should be extended to public defenders on public policy grounds, stating:
Implicit in the extension of judicial immunity to prosecutors was the recognition of a public policy encouraging free exercise of professional discretion in the discharge of pre-trial, trial and post-trial obligations. [463 F.2d at 1048]
Other public policy consideration cited by the court included the desirability of attracting and maintaining "able men and women" in public defender roles who would otherwise be discouraged from such tasks if subjected to complaints, often pro se, while their counterparts in the judicial process enjoyed immunity.
To subject this defense counsel to liability, while cloaking with immunity his counterpart across the counsel table, the clerk of the court recording the minutes, the presiding judge, and counsel of a co-defendant, privately retained or court appointed, would be to discourage recruitment of sensitive and thoughtful members of the bar. [Id. at 1049.]
Finally, the court noted the chilling effect on defense counsel's tactics that the constant threat of suit would have  involving *310 the attorney in "an intrinsic conflict of protecting himself and representing his client." Ibid.
These public policy considerations are echoed in other circuit court decisions which have held that public defenders, like prosecutors, enjoy absolute immunity in defense of claims for acts done in the performance of judicial duties. Miller v. Barilla, 549 F.2d 648 (9 Cir.1977); Minns v. Paul, 542 F.2d 899 (4 Cir.1976). The third circuit recently reaffirmed its Brown holding in Black v. Bayer, 672 F.2d 309 (3 Cir.1982), cert. den. 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982), holding that public defenders and court-appointed counsel are absolutely immune from suit under 42 U.S.C.A. § 1983, stating:
We should not forget as judges what we know as lawyers, and as lawyers we know that exposing court-appointed counsel to liability under § 1983 would deter many qualified, competent lawyers from accepting court appointments in criminal cases. [672 F.2d at 317]

B. An exception to absolute immunity of public defenders is for conspiracy or intentional misconduct.
An exception to immunity afforded public defenders or court-appointed counsel was created by the Supreme Court in Tower v. Glover, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). There, the Supreme Court held that public defenders do not enjoy immunity in § 1983 actions where there is an alleged conspiracy or intentional misconduct. In that case, the Court discussed the possible origins of immunity for public defenders, noting that immunities in this country have been borrowed from English precedent and that barristers are close cousins to public defenders. Barristers enjoy broad immunity except for intentional misconduct because, like their counterparts, they are not free to pick their clients, they have no formal contractual relationship and they cannot sue their clients for a fee.
Thus, the third circuit's holdings in Brown and Black were modified only to prohibit immunity when there is a conspiracy alleged and maintained.
*311 Therefore, designated counsel are not entitled to immunity when conspiracy or intentional misconduct are involved.

C. Other exception to "absolute" immunity of public defenders is a claim of legal malpractice.
Another exception to the "absolute" immunity of public defendants is for a claim of legal malpractice.
Public defenders enjoy only qualified immunity. Polk Cty. v. Dodson, supra, 454 U.S. at 325, 102 S.Ct. at 453, 70 L.Ed.2d 521. Federal law does not now provide immunity for court-appointed counsel (in a federal criminal proceeding) in a state malpractice suit brought by a former client. Ferri v. Ackerman, 444 U.S. 193, 205, 100 S.Ct. 402, 410, 62 L.Ed.2d 355, 365 (1979).
The rationale in Ferri was that federal prosecutors served the interest of society as a whole, but that court-appointed defense counsel function more like privately-retained attorneys. This distinction was said to render irrelevant the grounds on which judicial or quasi-judicial immunity is based  the public's interest in an efficient, effective judicial system.
Whether an individual is represented by private counsel or counsel appointed from a publicly-funded institution, he is entitled to the same level of competency. Moore v. United States, 432 F.2d 730 (3 Cir.1970).
A public defender is not immune from liability for professional malpractice. See Annotation, "Public defender-malpractice immunity," 6 A.L.R. 4th 774 (1981); Spring v. Constantino, 168 Conn. 563, 362 A.2d 871 (1975) (public defender is like any other attorney; the court rejected the contentions (1) that the doctrine of judicial immunity should be extended to public defenders, (2) that the common-law doctrine of sovereign immunity which extends to public officials applies to a malpractice action brought against a public defender; and (3) that there is a statutory immunity of public officers and state employees). See also Reese v. Danforth, 486 Pa. 479, 406 A.2d 735, 6 A.L.R. *312 4th 758 (Sup.Ct. 1979) (public defender is not a public official entitled to immunity).
Once the appointment of a public defender in a given case is made, his public or state function ceases, and thereafter, he functions purely as a private attorney concerned with servicing his client; thus, he ought to be subject to liability for tortious conduct. Ibid.
This court finds that there is qualified immunity except for conspiracy or intentional misconduct or legal malpractice.

THE COMPLAINTS AGAINST DEFENDANTS, APICELLA AND CONTALDI, FAIL TO STATE CLAIMS FOR CONSPIRACY OR CIVIL RIGHTS VIOLATIONS UPON WHICH RELIEF CAN BE GRANTED.
Defendants, Joseph Apicella and Joseph Contaldi seek dismissal of the complaints against them for failure to state a claim upon which relief can be granted. R. 4:6-2(e).
Plaintiff, Jill Schneider Delbridge's complaint against Joseph R. Contaldi, so far as it mentions conspiracy, alleges that "The defendant conspired to work with the plaintiffs, in the court case, and the court and hurt his own client, in an attempt to suppress evidence in order to protect the court and the Division of Youth and Family Services, along with their attorney," and "Defendant ... conspired with others to allow the plaintiff to lose custody of her six children and court-findings...."
The complaint of Adolph Delbridge against Joseph A. Apicella contains similar allegations.
Neither complaint alleges, even in conclusory language, any civil rights violations.
Plaintiffs' complaints fail to meet the requirements for pleadings of R. 4:5-2. While courts must construe pleadings liberally, a complaint "must nonetheless fairly apprise an adverse party of the claims and issues to be raised at trial." Miltz v. Borroughs-Shelving, a Div. of Lear, 203 N.J. Super. 451, 458, *313 497 A.2d 516 (App.Div. 1985). The Miltz court noted that pleadings must contain a claim for relief, a statement of facts on which the claim is based showing that plaintiff is entitled to relief and a demand of judgment for the relief to which plaintiff deems himself entitled. Ibid. See also Spring Motors Distributors, Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29, 465 A.2d 530 (App.Div. 1983), rev'd on other grounds 98 N.J. 555, 489 A.2d 660 (1985).
In the instant case, these two complaints are entirely devoid of facts, much less material facts, which would suggest that these two defendants conspired with anyone. The complaints, which are almost identical, consist of conclusory statements with no supporting facts or dates of events by which plaintiffs believe they have been aggrieved.
Plaintiffs, in their response, focus on the question of an alleged conspiracy and label every action or inaction of the various parties in the underlying proceedings as conspiratorial. Defendants range from Governor Kean to an E.M.T. with an ambulance service. For example, plaintiffs allege that Contaldi and Apicella refused to get reports from the Urban League and that this amounted to a conspiracy. They allege that Hartley's "rejection" of the report of a therapist was conspiratorial because his judgment happened to coincide with that of the Deputy Attorney General. These are representative of plaintiffs' efforts to cast the actions of defendants as part of a conspiracy; nonetheless, they do not amount to the type of evidence necessary to sustain such a claim.
The law requires that plaintiffs demonstrate the existence of an overt act of one or more of the conspirators in furtherance of the conspiracy. They must plead and show a common goal or real agreement to achieve an unlawful purpose or to achieve a lawful purpose by unlawful means, and finally, the overt act must be the proximate cause of the damages to plaintiff. Bd. of Education, Asbury Park v. Hoek, 66 N.J. Super. 231, 241, 168 A.2d 829 (App.Div. 1961). Presumably, the damage to plaintiffs, *314 for which they now seek relief, was the removal of their children from their home and the court finding of child abuse and neglect. Plaintiffs' conclusory allegations of a massive conspiracy among all the participants in the underlying proceedings, in response to this motion, is insufficient. There is not one overt act pleaded in furtherance of an unlawful purpose. Even assuming infirmities in those proceedings, such does not amount to a conspiracy.
Complaints cannot survive a motion to dismiss where the claims are conclusory or vague and unsupported by particular overt acts. United States v. City of Philadelphia, 644 F.2d 187 (3 Cir.1980). See also Dlugosz v. Fred S. James and Co., 212 N.J. Super. 175, 184, 514 A.2d 538 (Law Div. 1986).
A complaint alleging conspiracy under color of state law must set forth more than conclusory allegations of government involvement. For example, an employment discrimination action premised on nothing more than unsupported inferences drawn from adverse administrative rulings, failed to satisfy the government action requirement under the "color of state law" requirement. Ibid. The pleadings must be supported by underlying factual detail. Haskins v. San Diego County Dept. of Public Welfare, 161 Cal. Rptr. 385, 393, 100 Cal. App.3d 961, 972 (Ct.App. 1980).
In order to state a claim under 42 U.S.C.A. § 1983, plaintiffs must allege in their complaint, which they failed to do, that defendants acted under color of state law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). See annotation with cases in which a criminal defendant brought a civil action under 42 U.S.C.A. § 1983 against a public defender, alleging that he, the criminal defendant, had been deprived of his civil rights under color of state law by reasons of the public defender's professional malpractice in defending him. Annotation, "Court-appointed attorney as subject to liability under 42 U.S.C.A. § 1983," 36 A.L.R.Fed. 594 (1978).
To establish a cause of action under a civil rights statute, providing a cause of action for conspiracy to deprive individuals *315 of their civil rights, "plaintiff must allege conspiracy; a purpose of depriving a person or class of persons of equal protection, or privileges and immunities under the law; an act in furtherance of the conspiracy; and either personal or property injury or deprivation of a right or privilege of citizenship." 42 U.S.C.A. § 1983. Brooks v. Fitch, 534 F. Supp. 129, 136 (D.N.J. 1981).
Allegations that a state court judge, along with a state attorney general and county prosecutor, facilitated unlawful action by a landlord and his agents against plaintiff were insufficient to show that there was a joint activity between the private parties and the state or its agents, absent a contention that private and state actors directed themselves toward unconstitutional action by virtue of a mutual understanding or agreement. Rosquist v. Jarrat Const. Corp., 570 F. Supp. 1206 (D.N.J. 1983).
A Civil Rights Act claim that a state prosecutor conspired with the state police to "burglarize" a defense investigator's luggage was insufficiently pleaded where the only allegation regarding the prosecutor was that he "acted in a conspiracy" with the policeman and others and there were no details linking the prosecutor and the police officer in any way or any allegation of fact tending to show existence of any agreement. A bare claim of conspiracy is not sufficient to state a Civil Rights Act claim. 42 U.S.C.A. § 1983. Hauptmann v. Wilentz, 570 F. Supp. 351 (D.N.J. 1983).
A civil rights complaint that defendants had conspired to withhold information showing alleged illegal removal of plaintiff from Canada to New York without any extradition procedures or warrant failed to allege a cause of action under the civil rights conspiracy provision, since plaintiff did not allege a conspiracy to deprive him of the equal protection of the United States laws or of equal privileges and immunities under the laws and an overt act in furtherance of the object of the conspiracy with resulting injury to plaintiff. 42 U.S.C.A. § 1985. Waits v. McGowan, 516 F.2d 203 (3 Cir.1975).
*316 While it is true that plaintiffs opposing a motion to dismiss are entitled to the benefit of every favorable inference of fact, defendants are not obliged to defend against a barrage of words, which have apparent legal meaning but which are untied to any acts of the respective defendants or to any claim for relief. New Jersey courts have not hesitated to dismiss complaints where, as here, no material fact or overt act is alleged which would raise a question of fact as to defendants' states of mind, such as malice or willful intent. See Gomez v. Murdoch, 193 N.J. Super. 595, 602, 475 A.2d 622 (App.Div. 1984). A shotgun approach to pleading is not enough. If plaintiffs had sufficient facts to prove a conspiracy, they could have filed complaints setting forth operative and material facts showing how they have been aggrieved; rather, they engage in a collateral attack on the underlying child abuse/neglect proceedings, without benefit of factual support for the conspiracy allegations. Defendants cannot respond to such conclusory allegations.
Here, plaintiffs have failed to identify the alleged conspirators, beyond the court and DYFS, and have alleged no overt act nor have they provided any facts which would suggest a meeting of the minds between Apicella, Contaldi and "the others." The complaint, as it relates to a conspiracy on the part of Apicella or Contaldi, is dismissed, as the allegations do not meet the requisite showing for a conspiracy claim.
Since no cause of action against Apicella and Contaldi for conspiracy or a civil rights violations has been properly pleaded, the claims against them will be dismissed.

PLAINTIFFS' COMPLAINTS ALLEGING LEGAL MALPRACTICE AGAINST DEFENDANTS, APICELLA AND CONTALDI, DO NOT SET FORTH CLAIMS UPON WHICH RELIEF CAN BE GRANTED.
Plaintiff, Adolph Delbridge's complaint against defendant, Joseph A. Apicella alleges that defendant was appointed *317 to be the legal representative of plaintiff in a family court matter to protect plaintiff's rights and "to do certain appeals that were necessary." He further alleges:
... the defendant did not properly represent the plaintiff, did not protect plaintiff's rights, violated the attorney code of conduct, failed to file proper appeals and thus allowed violations of the court, to be suppressed and it seems as though, the defendant may have taken a case and received monies, and the defendant claimed that he did not know certain things that were acquainted with family court matters.
3. Defendant failed to properly defend or represent the plaintiff, and conspired with the court and the Division of Youth and Family Services to allow the plaintiff to lose court-findings. The defendant also acted in a manner as to conspire to protect the court and the Division's attorney, at the plaintiff and the plaintiff's six children's expense. The defendant did not use his legal knowledge to properly represent the plaintiff, thus causing the plaintiff to lose his standing children due to the defendants legal malpractice.

Plaintiff, Jill Schneider Delbridge's complaint against defendant, Joseph R. Contaldi, containing almost the identical allegations of her husband, alleges that defendant was appointed to be the legal representative of plaintiff in a family court matter and to protect plaintiff's rights and "to do certain appeals and or motions, that were necessary, in properly defending the plaintiff."
Plaintiffs, in addition to conspiracy claims, allege that their attorneys, in the underlying proceedings, failed to take numerous interlocutory appeals during the conduct of the Title 9 proceedings. They note, in their responding brief, that they were advised that "Appellate Courts did not like interlocutory appeals, before the case is finalized." However, no issue is barred from review on final appeal, and an appeal is pending.
Whether a decision not to take an interlocutory appeal, causing some temporary harm, was an error in judgment amounting to malpractice is a factual question. "The standard for determining legal malpractice is that an attorney is obligated to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess." Procanik v. Cillo, 206 N.J. Super. 270, 282-283, 502 A.2d 94 (Law Div. 1985), citing St. Pius X House of Retreats v. Camden Dioc., 88 N.J. *318 571, 588, 443 A.2d 1052 (1982). What is required is that an attorney exercise his best judgment in the prosecution of litigation entrusted to him. Ibid. Plaintiffs' allegations that decisions not to take interlocutory appeals (apparently they desired an appeal on every decision made or action taken in the Title 9 proceedings) amounted either to a conspiracy or negligence, may or may not demonstrate improper judgment on the part of Contaldi or Apicella. Defendants contend that no rights have been lost since a final appeal is pending and therefore, there had been no damage to plaintiffs; however, if leave to appeal had been granted and plaintiffs were ultimately successful, there would have been damages between the time leave to appeal was granted and the case decided favorably to them and the time when their appeal is actually decided.
Plaintiffs bear the burden of proving that their losses were proximately caused by the negligence of their attorneys. This burden "cannot be satisfied by conjecture, surmise or suspicion." Lamb v. Barbour, 188 N.J. Super. 6, 12, 455 A.2d 1122 (App.Div. 1982). Here, the underlying premise that the results would have been different, if interlocutory appeals had been taken, has not been established since the Appellate Division has not yet determined that any of the orders were improper.
For instance, if the trial for legal malpractice were to be held today, plaintiffs could not prevail because they cannot show that the negligence, if any, of their court-appointed attorneys was a proximate cause of any damages sustained by them. They cannot collaterally attack the Hudson County orders. Therefore, their complaints alleging legal malpractice do not set forth claims upon which relief can be granted.
Negligence claims are not encompassed within the Civil Rights Act. 42 U.S.C.A. § 1983. Davidson v. O'Lone, 752 F.2d 817 (3 Cir.1984), cert. granted 417 U.S. 1134, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985); Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (concurring opinion).
*319 Therefore, negligence (legal malpractice) is not a violation of any civil rights statute; rather, it is a common law tort. It is not a deprivation of civil rights.

DESIGNATED COUNSEL ARE "PUBLIC EMPLOYEES" WITHIN THE MEANING OF THE TORT CLAIMS ACT, AND THEREFORE, ENTITLED TO THE IMMUNITIES AND BENEFITS, SUCH AS INDEMNIFICATION, GRANTED BY THE ACT.
Plaintiffs claim that they were harmed by the actions or inactions of defendants, Apicella and Contaldi, in the course of the child abuse/neglect proceedings.
Whether Apicella and Contaldi are entitled to indemnification from the State as "public employees" within the meaning of the Tort Claims Act, as Hartley clearly is, is a question where there is little decisional law. However, the case most analogous to the present one is Martin v. Tp. of Rochelle Park, 144 N.J. Super. 216, 365 A.2d 197 (App.Div. 1976). In that case, the court found that a township attorney was a public employee and that the Tort Claims Act controlled the matter. Id. at 221, 365 A.2d 197.
Township attorneys and other municipal counsel are appointed to their posts pursuant to statute. See, e.g., N.J.S.A. 40A:9-139; 40:55D-24 and -71. Municipal attorneys are considered municipal employees. Myers v. Worrick, 182 N.J. Super. 117, 123-125, 440 A.2d 72 (Law Div. 1981) (municipal attorney retained on an hourly fee basis with maximum annual fee is a municipal employee); Lehrhaupt v. Flynn, 140 N.J. Super. 250, 268, 356 A.2d 35 (App.Div. 1976) (zoning board attorney is employee of town).
Municipal attorneys for the majority of towns in New Jersey serve part time and maintain a private practice. In this regard, they are much like designated counsel for the Public Defender's Office. As with municipal attorneys, designated counsel perform a public function. In fact, the Office of the Public *320 Defender could not fulfill its statutory mandate to represent indigent clients without the ability to attract and appoint pool counsel. The instant situation demonstrates that fact clearly: where a conflict exists, outside counsel must be appointed. N.J.S.A. 2A:158A-9.
To view these counsel differently than their statutory counterparts, staff attorneys, for purposes of the Tort Claims Act would seriously exacerbate the problem of finding attorneys willing to do this kind of work at the wages offered. It would impose an additional burden and liability for which compensation is unavailable.
The only decision discussing in detail the definition of "employee" under the Tort Claims Act is N.J. Property  Liability Ins. Guar. v. State, 195 N.J. Super. 4, 477 A.2d 826 (App.Div. 1984). In that case, the Appellate Division held that DYFS foster parents were not employees for purposes of the act. The court relied upon a test of control whose factors include the degree of control exercised by the employer over the means by which the task is accomplished. Id. at 13-14, 477 A.2d 826. If that criterion alone is applied, designated counsel are surely unable to meet the test because the essence of their representation in this instance is independence of judgment in carrying out their responsibilities to their clients. The office does not direct how the task should be performed since the very reason they were appointed was to avoid a conflict.
Another criterion is compensation. The court indicated that the fact that foster parents were not compensated was a significant factor in its holding that they were not employees for purposes of the act. Id. at 14, 477 A.2d 826. Designated counsel, however, meet this significant criteria.
Whether equipment is furnished is the third criterion. With regard to cases handled by designated counsel, the Office of the Public Defender directly provides those resources necessary to the defense of a case, e.g., payment for experts or other consultants and payment for transcripts. Office space and *321 secretarial services are provided by designated counsel, who are compensated on an hourly-fee basis to meet that expense. Certainly, the office provides the most critical items, experts and transcripts, for an attorney in his representation of the client. Thus, the third criterion is met.
The final criterion, right of termination, like the first, is inimical to the role of designated counsel in a particular case, who owes a duty to his client. It is the client, not the Office of the Public Defender, who may terminate the services of his attorney. Nonetheless, once indigency is determined and an assignment is made and accepted, the client is a client of the Office of the Public Defender. All litigation is done in the name of the Public Defender. Therefore, the right of termination does exist as to the client. Moreover, the list (or pool) of approved designated counsel maintained by the office (N.J.S.A. 2A:158A-7(c)) includes the right and responsibility of the office to remove an attorney from the pool if he does not meet the established standards. N.J.S.A. 2A:158A-8 and -13.
The court in N.J. Property Liability Ins. Guar., noted that there might be cases where the control test could appropriately be supplemented by the relative nature of the work standard, which had been applied by the trial court in that case. 195 N.J. Super. at 10-11, 477 A.2d 826. Those would be cases involving social legislation where public policy considerations would dictate the use of an additional standard. In this instance, the creation of the Office of the Public Defender was the legislative response to a constitutional mandate to provide representation to indigent defendants or others, such as parents, who might lose significant rights or liberty. The State, in assuming this burden, made designated counsel an integral part of the operation of the office. Public policy certainly dictates that the broader criteria be applied here.
Those criteria, economic and functional, include the extent of the economic dependence of the worker on the business and the relationship of the nature of the work to the operation of the *322 business. The latter has been fully addressed: the office must have designated counsel to fulfill its statutory mandate. As to the former, for many attorneys work as designated counsel is a substantial part of their practice. The fees currently provided do not sufficiently cover office overhead so that the additional burden of assuming liability in these cases renders the economic burden even greater for designated counsel and will reduce the office's ability to attract counsel and could lead to an inability to have proper representation.
Furthermore, the broader test more fairly weighs the nature of the relationship between the office and designated counsel:
... there are various situations in which the control test does not emerge as the dispositive factor. For example, where it is not in the nature of the work for the manner of its performance to be within the hiring party's direct control, the factor of control can obviously not be the critical one in the resolution of the case, but takes its place as only one of the various potential indicia of the relationship which must be balanced and weighed in determining what, under the totality of the circumstances, the character of that relationship really is. [N.J. Property  Liability Ins. Guar. v. State, supra, 195 N.J. Super. at 10, 477 A.2d 826 (citing Marcus v. Eastern Agricultural Ass'n., Inc., 58 N.J. Super. 584, 602, 157 A.2d 3 (App.Div. 1959) (Conford, J.A.D. dissenting), rev'd on dissent, 32 N.J. 460, 161 A.2d 247 (1960))]
The factor of control, as pointed out by Judge Conford, is inimical to the task to be performed, but that should not end the inquiry. It is only one indicium to be considered. This court will apply not only the control test, but the broader relative nature of the work standard, in determining whether Public-Defender-designated counsel are employees within the meaning of the Tort Claims Act. Application of these criteria, together with the fact that municipal attorneys are considered employees, indicates that designated counsel are such employees.
The court in N.J. Property-Liability Ins. Guar. v. State, supra, expressed concern that, if it ruled otherwise, it would place an intolerable burden on the State. 195 N.J. Super. at 16, 477 A.2d 826. While surely entitled to consideration, that concern is not dispositive. If counsel should act outside the scope of his employment or his act constitutes a crime or fraud, then the State is not liable. N.J.S.A. 59:3-14;:2-10. The types *323 of claims against designated attorneys are generally fundamentally different (e.g., they will not involve personal injury), and defenses attach to designated counsel that foster parents do not have. N.J.S.A. 59:3-2(b).
As Apicella and Contaldi are employees within the meaning of the act, they are entitled its benefits, specifically indemnification. 59:10-1 et seq.

CONCLUSION.
The motion for summary judgment by defendants, Office of the Public Defender, Law Guardian Program and Thomas Hartley to dismiss the complaint against them is granted.
The motion by defendants, Joseph Apicella and Joseph Contaldi, to dismiss the complaints against them, for failure to state claims upon which relief can be granted, is granted.
NOTES
[1] A total of 42 separate complaints have been filed (apparently, since no filing fees were required of plaintiffs who were permitted to file as indigents). The cases have been consolidated. Since these matters involve Hudson County judges and other officials, the venue was transferred to Essex County. On December 16, 1988, the court granted plaintiffs leave to file amended complaints in five cases to add 37 additional defendants.
[2] Plaintiffs have appealed the Title 30 guardianship proceeding, which appeal is pending.
[3] The court has this day, in a separate written opinion, granted the motion for summary judgment to dismiss the complaints against the Governor, Attorney General, DYFS and many state agencies and employees.