PAUL CASHEN AND IRENE CASHEN, HIS WIFE, PLAIN-
TIFFS, v. FRANK SPANN, ROBERT BICKLEY, JOHN
DUNNE AND "JOHN DOE," BEING A FICTITIOUS
NAME OF THE "RELIABLE INFORMER," DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided July 19, 1976.

*Mr. Joseph S. Accardi* for plaintiffs. (*Messrs. Accardi & Koch,* attorneys).

*Mr. Stephen S. Weinstein* for defendants Spann, Bickley and Dunne.

ANTELL, A. J. S. C., Temporarily Assigned. In this action, which sounds essentially in defamation, plaintiffs seek compensatory and punitive damages from three police officers for wrongfully obtaining and executing a search warrant upon plaintiffs' home. Their instant application is for an

order to identify the informant whose information partially formed the basis of defendants' affidavit upon which the warrant issued. This phase of the proceeding is before us on remand from the Supreme Court, *Cashen v. Spann,* 66 *N. J.* 541 (1975), whose opinion modified the prior judgment of the Appellate Division, 125 *N. J. Super.* 386 (1973). In considering this application we are governed by standards outlined for us by the Supreme Court at pages 555–557 of its opinion. These require us to weigh the facts tending to show possible unfairness to plaintiffs from denying disclosure against possible harm to state interests resulting from disclosure. In this connection our attention is directed, *"inter alia"* to the nature of the claims asserted by plaintiffs, their actual loss, their reasons for seeking disclosure, and the necessity of the information to plaintiffs' case. We are also to consider possible prejudice to pending and future prosecutions and the risk of possible harm to the informant. We are cautioned, also, that within the civil setting the application for disclosure is not as compelling as in the criminal.

On June 19, 1970 plaintiffs' home was visited by investigators and detectives from the office of the Morris County Prosecutor. They had a search warrant issued by a County Court judge in reliance upon an affidavit prepared by defendants and sworn to by defendant Bickley. Among other things, the affidavit recounted advice given to him by an informant that plaintiff Paul Cashen was engaged in bookmaking at the Picatinny Arsenal. The specifics of the affidavit and the circumstances leading up to the raid are detailed in the opinion of the Appellate Division (125 *N. J. Super.* at 393 through 395.) It suffices to say that the entire incident was characterized by the Appellate Division as a "bizarre mistake," a conclusion drawn from four clearly identified falsehoods in the affidavit, and with which the Supreme Court was evidently in agreement. 66 *N. J.* at 544. The data attributed in Bickley's affidavit to the informant are among the falsehoods catalogued.

Following the suggestion of the Supreme Court, the factual record has been supplemented to the extent the parties have chosen to do so.

Although taken by defendants, plaintiff Paul Cashen's deposition of June 18, 1975 was received into evidence on plaintiffs' offer. We learn therefrom that at the time of the incident Cashen was subject to no physical abuse, and that the detention which he relies on for a cause of action consisted only of the policeman holding his forearm while guiding him into the house. Cashen responded to this by slapping the policeman's hand away and adjuring him not to touch him, a request which was heeded. The deposition also disclosed that plaintiffs have sustained no out-of-pocket loss. The only adverse consequence that has come to Cashen's attention is that his neighbors teasingly address him as a "bookie."

The raid conducted at the Cashen home produced no evidence of criminal conduct and accordingly no charges were ever filed against Cashen. However, the investigation into which he was mistakenly drawn gave rise to gambling indictments against others. The Cashen deposition discloses that plaintiffs' first contact with their present attorneys consisted of telephone calls made by the latter to Cashen. They represented certain of the indicted parties and sought Cashen's cooperation as a witness. The record is unclear as to the sequence of events which then followed, but it is found that following the entry of guilty pleas by those defendants the attorneys' representation of the plaintiffs began. Their retainer is on a contingent fee basis, without any understanding yet expressed as to payment of costs. Plaintiffs have so far borne no part of the costs of this litigation, notwithstanding that these may already approximate "thousands of dollars." Cashen's understanding is that he has no responsibility for the payment of costs, regardless of how the litigation ends. He has no idea who is meeting these expenses and has not asked. The reason which he gave for

wanting the informer's name is to join him as a party defendant to this action.

The court also heard from Stephen R. Champi, who is the Somerset County Prosecutor and who serves as president of the New Jersey County Prosecutors Association. His testimony stressed the detriment to law enforcement which would follow from disclosure. He testified that informants are vital to efforts against organized crime and that without their assistance there would be no way of infiltrating its ranks. He further testified that without being able to give an assurance of absolute confidentiality, the availability of informants' services would be seriously curtailed. He explained that the average informant's intellectual capabilities and motivations are not such that qualified assurances could be made understandable to him. Once an officer starts to explain to his informant that there may be circumstances under which he could not guarantee the informant's anonymity, the informant's willingness to cooperate dissolves. On this basis he rests his belief that ordering disclosure herein would be profoundly detrimental to law enforcement.

Defendants' resistance to this motion is bottomed upon *Evid. R.* 36. It provides:

A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a government division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.

The privilege is by no means absolute. *State v. Oliver,* 50 *N. J.* 39 (1967); *State v. Infante,* 116 *N. J. Super.* 252, 257 (App. Div. 1971); *State v. Roundtree,* 118 *N. J. Super.* 22, 31 (App. Div. 1971). That the drafters of the rule never intended to accommodate the State's claimed need for total confidentiality is evident from the fact that the rule itself

provides that the privilege is not available where "disclosure of his identity is essential to assure a fair determination of the issues."

In determining the applicability of the foregoing exception we are required to balance the unfairness of denying disclosure against the possible harm to state interests which would result from disclosure. In weighing the latter we note first that no evidence was offered by defendants tending to show how state interests would be adversely affected by disclosing the identity of this particular informant. From nothing in the evidence can it be inferred that he is involved in further investigations on behalf of the State or that his usefulness in pending investigations may be compromised by disclosure. Nowhere is it said that his personal safety will be jeopardized if disclosure is ordered. It is noted, also, that he is not the same source of information which implicated the others who were indicted and convicted following the prosecutor's investigation.

The circumstances surrounding plaintiff's retention of their present attorneys, the fact that they previously represented guilty defendants, and the fact that plaintiffs' substantial litigation expenses have thus far been carried by someone else with no understanding on plaintiffs' part as to their ultimate responsibility in connection therewith naturally draw the court's attention. These, measured against the modest actual hurt suffered by plaintiffs, stir the embers of conjecture as to whether outsiders might not have a malign interest in knowing the informant's identity. Perhaps this should fairly be considered as bearing upon plaintiffs' true reason for seeking disclosure, but defendants themselves have not made this point, and this material's very existence was not even thought of sufficient import by defendants to warrant introduction into the record. It is therefore deemed to be innocuous, and the court draws no inference therefrom adverse to plaintiffs' application for disclosure.

The anxieties expressed by Prosecutor Champi have long been the subject of judicial concern. In *State v. Burnett,*

42 *N. J.* 377, 385 (1964), Chief Justice Weintraub expressly recognized "the informer is a vital part of society's defensive arsenal. The basic rule protecting his identity rests upon that belief." See also, *State v. Oliver,* 50 *N. J.* 39, 47 (1967). But in our concern with a vital principle we must not lose sight of the fact that the relief here proposed goes no further than to penetrate the informant's identity where the policeman deliberately elects to submit his confidant's information as part of a search warrant application, where he swears that the information came from a reliable source, and where later investigation shows, as here, that (1) the "reliable informant" was fictionalized, or (2) the informant gave false information, or (3) the policeman swore falsely as to what the informant told him. Whether the informant's identity is jeopardized, therefore, depends in the first instance upon the use to which the policeman decides to put his information. If he uses it only for purposes of further covert investigation, if he takes the trouble to verify and evaluate it, the promised confidentiality should not be threatened. If, on the other hand, he uses raw defamatory material recklessly and wantonly to secure court process by which to violate constitutionally protected rights, then the security of his informant's identity will be correspondingly lessened.

Thus, the decisive choice affecting the privilege's later vulnerability is made by the police officer at the outset. It is comparable in many respects to the decision of whether to employ the so-called participant-informer whose identity, under applicable court decisions, has been ordered disclosed where fairness requires. *State v. Oliver, supra* at 45; *State v. Infante, supra* 116 *N. J. Super.* at 257; *State v. Roundtree, supra* 118 *N. J. Super.* at 31. Obviously, a police officer who must make a decision fraught with consequences as serious as these should choose his options with the greatest care. Elemental considerations of fair dealing, after all, require that the burden of law enforcement's misjudgment should be borne by law enforcement, and not by the abused

individual who seeks a civil remedy for the wrong he has suffered.

In evaluating the nature of plaintiffs' claim its fundamental seriousness deserves our most careful study, for they seek vindication of a constitutionally protected right. No out-of-pocket loss can be shown, but they are nevertheless entitled to the recovery of "general damages which the law presumes to follow inevitably from a defamatory publication and which, therefore, are often recoverable without proof of injury." *Bock v. Plainfield Courier-News,* 45 *N. J. Super.* 302, 309 (App. Div. 1957).

Actual damage to reputation may be suffered although the plaintiff may be unable to prove it. By the very nature of the harm resulting from defamatory publications, it is frequently not susceptible of objective proof. Libel and slander work their evil in ways that are invidious and subtle. The door of opportunity may be closed to the victim without his knowledge, his business or professional career limited by the operation of forces which he cannot identify but which, nonetheless, were set in motion by the defamatory statements. [*Harper & James, The Law of Torts,* § 5.30 at 468 (1956)]

Also see, 3 *Restatement, Torts,* § 621 at 313 *et seq.* (1938).

▇ They also seek punitive damages, recoverable upon a showing of "malice in fact," which includes not only "ill will, or some wrongful motive, implying a willingness or intent to injure," but also "such a want of feeling as to impute a bad motive." *Bock v. Plainfield Courier-News, supra* at 312.

▇ Although the extent of plaintiffs' actual loss is included in the Supreme Court's specification of factors germane to the "fairness" question, the relief sued for in this action must be seen not just as a mode of restoring one aggrieved individual to his former position, but as a sanction with which to compel police adherence to valued constitutional standards. I would weigh this as one of the *"inter alia"* elements contemplated by the Supreme Court's opinion (66 *N. J.* at 555). In criminal cases the Fourth Amendment protection has been largely given a priority second to

the goal of ascertaining the truth, and evidence seized under search warrants is permitted even where the latter were based on affidavits containing false information. The deterrent factor is now said to lie in civil damage suits, together with contempt proceedings and perjury prosecutions. *State v. Petillo,* 61 *N. J.* 165, 194 (1972), *cert.* den. 410 *U. S.* 945, 93 *S. Ct.* 1393, 35 *L. Ed.* 2d 611 (1973). Even the New Jersey Attorney General in an amicus curiae brief recently filed in *Wolff v. Rice,* 422 *U. S.* 1055, 95 *S. Ct.* 2677, 45 *L. Ed.* 2d 707, decided July 6, 1976, and published under the foreboding title, "Demise of The Exclusionary Rule," 3 *Crim. Justice Q.* 169, 178 (Fall 1975), argues that civil damages is a more rational form of deterrent than the exclusionary rule since it allows criminal justice to be pursued and at the same time for correction of the offense to the individual. Cited as authority is *Cashen v. Spann,* 66 *N. J.* 541 (1975).

The reliance placed by the issuing magistrate upon the contents of the police affidavit is absolute and his decision to issue the warrant virtually unreviewable. The magnitude of the consequences which follow makes it mandatory that full access to relief be provided where the trust is betrayed. In the case presented disclosure of the informant's identity is imperative to give plaintiffs' remedy any meaning and, concomitantly, to serve the policy of deterring Fourth Amendment violations of this kind. If the informant's existence is a fiction created by defendants, the significance thereof in terms of plaintiffs' remedy is obvious. If he did exist, the alternatives are that he stated the defamatory matter published in the affidavit by defendants or that he did not. Either answer could be decisive as to his own liability or the liability of defendant police officers. It is impossible to understand how plaintiffs can make an effective presentation of this claim if they are deprived of access to these crucial facts.

Within the setting of a criminal prosecution it is said that where a defendant moves to suppress unlawfully seized

evidence he "seeks to avoid the truth * * * to escape the inculpatory thrust of evidence in hand * * *" *State v. Burnett, supra* 42 *N. J.* at 386. That the judicial attitude toward suppression orders is colored by the belief that such measures, by definition, impede the truth-finding process is well known. But is such response any less appropriate here? In the one case a constitutional value is deferred that evidence may be received to convict a defendant in a criminal trial. In the other a privilege rule is deferred in favor of disclosing vital evidence in a civil action. Is there a meaningful difference between the two? I think there is not. In both a policy consideration is invoked to obstruct access to relevant and material evidence, and the principle that full disclosure ordinarily best promotes the proper administration of justice is applicable equally to each. More importantly, our courts have promised a remedy in damages where search warrants are issued on false affidavits, even where evidence has been seized thereunder, and I cannot believe that they intended thereby to obscure the stifling of a great constitutional protection by offering an illusory hope of redress.

As Mr. Justice Douglas stated in another context in *McCray v. Illinois,* 386 *U. S.* 300, 316, 87 *S. Ct.* 1056, 1065, 18 *L. Ed.* 2d 62, 74 (1967) (dissenting opinion) : "[T]here is no way to determine the reliability of Old Reliable, the informer, unless he is produced at the trial and cross-examined. Unless he is produced, the 4th Amendment is entrusted to the tender mercies of the police." He noted also, in footnote 2 thereof, "It is not unknown for the arresting officer to misrepresent his connection with the informer, his knowledge of the informer's reliability, or the information allegedly obtained from the informer," citing *U. S. v. Pearce,* 275 *F.* 2d 318 (7 Cir. 1960), a case wherein an F.B.I. agent intentionally misstated vital facts in his supporting affidavit. The following language which he quoted from *Priestley v. Superior Court,* 50 *Cal.* 2d 812, 818, 330 *P.* 2d 39, 43 (Sup.

Ct. 1958), also responds to the policy arguments advanced by the defendants herein:

Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue. Such a requirement does not unreasonably discourage the free flow of information to law enforcement officers or otherwise impede law enforcement. Actually its effect is to compel independent investigations to verify information given by an informer or to uncover other facts that establish reasonable cause to make an arrest or search.

We have taken into account the possibility that the informant may have stated the facts truthfully to the detective, but that the latter failed to report them accurately to the issuing Judge. In such a case disclosure may be harsh to the informant, but, as noted by the Supreme Court at 66 *N. J.* at 552, the privilege is in reality "a privilege afforded the government in recognition of the compelling need of the State to protect its sources of information concerning criminal activity." It is not for the benefit of the informant. If the State's representative has compromised its right to confidentiality by swearing falsely no sound judicial policy will be advanced by treating the informant's embarrassment as a reason for the privilege to prevail.

It is concluded that disclosure of the informant's identity is essential to assure a fair determination of the issues.

In response to the following interrogatories served upon them by plaintiffs the defendants provided the answers shown:

31. State whether defendant made any investigation as to the plaintiffs prior to June 19, 1970 and if so, state what investigation he made and the dates, times and places for same.

ANS. Yes; Investigation and inquiry at Picatinny Arsenal as to the control of the phone which was being called by Dragos and/or Peragallo; information from a reliable, confidential informant working at Picatinny Arsenal; and New Jersey Bell Telephone records received on June 15, 1970.

35. State if the defendant knows the name of the party he spoke to at Picatinny Arsenal on June 15, 1970, regarding the activities of Paul Cashen.

ANS. Spoke to Security Guard at Picatinny Arsenal and received no cooperation and spoke to reliable, confidential informant.

In addition to, and independently of, the reasons we have already discussed, it would seem therefrom that upon the waiver principle enunciated in *Brogan v. Passaic Daily News,* 22 *N. J.* 139, 152–153 (1956), defendant's right to exercise the privilege has been forfeited. *Cashen v. Spann,* 125 *N. J. Super.* 386, 409 (App. Div. 1973), modified on other grounds, 66 *N. J.* 541 (1975).

For the foregoing reasons plaintiffs' motion for an order compelling disclosure of the informant's identity will be granted.