PAUL CASHEN AND IRENE CASHEN, PLAINTIFFS-RESPONDENTS, v. FRANK SPANN, ROBERT BICKLEY AND JOHN DUNNE, DEFENDANTS-APPELLANTS.

Argued May 8, 1978—Decided July 19, 1978.

*Mr. Stephen S. Weinstein* argued the cause for appellants (*Messrs. Weinstein and Korn,* attorneys; *Ms. Gail S. Boertzel* on the brief).

*Mr. Joseph S. Accardi* argued the cause for respondents (*Messrs. Accardi and Koch,* attorneys).

The opinion of the court was delivered by

SCHREIBER, J. This is still another round in the litigation of Paul and Irene Cashen against three Morris County detectives, John Dunne, Robert Bickley and Frank Spann, for monetary redress arising out of an allegedly illegal search of the Cashen home. *Cashen v. Spann,* 66 *N. J.* 541, *cert.* den. 423 *U. S.* 829, 96 *S. Ct.* 48, 46 *L. Ed.* 2d 46 (1975) ; *Dunne v. Fireman's Fund Am. Ins. Co.,* 69 *N. J.* 244 (1976).

The raid on the Cashen home was apparently an horrendous mistake. A search warrant had been issued on the basis of defendant Bickley's affidavit reciting that he had received information concerning a gambling operation being carried on at Picatinny Arsenal in June 1970 by the plaintiff Paul Cashen. Mr. Cashen had retired from his job at the Arsenal on October 31, 1969 and had not returned there except on one day in January 1970.

In the first round of this litigation plaintiffs sought to obtain the name of the informer referred to by defendant Bickley in his affidavit. The trial court rejected the request. The Appellate Division reversed and ordered disclosure. 125 *N. J. Super.* 386 (1973).

Upon review of that issue in this Court, we disagreed with the Appellate Division. 66 *N. J.* 541. Justice Pashman in a comprehensive opinion reviewed the scope and nature of the "informer's privilege." He expressed doubt that the trial court had "an adequate record to actually perform the delicate and difficult balancing of interests called for" and stated that "[i]f, on remand, plaintiffs choose to press their motion to compel discovery * * * the trial court will be required to consider all the facts bearing both on the possible unfairness to plaintiffs of denying disclosure of the identity of the informer and the possible harm which may be inflicted on State interests by disclosure." *Id.* at 555.

Justice Pashman then carefully delineated some of the factors to be considered: the nature of plaintiff's claims, the actual loss, the necessity of informant's testimony, the possible prejudice to future prosecutions, and the danger of harm to the informant. *Id.* He noted that the court should "give less weight to the interests of plaintiff if it appears that he has suffered only insubstantial damages." *Id.* at 556. He emphasized that in civil cases maintaining confidentiality of the informer's identity is "entitled to a greater degree of respect." *Id.* He advised that, although the identity of an informant may be disclosed in a civil suit under some circumstances, it was "a step to be taken

with caution and only with full appreciation of all the consequences." *Id.* at 557.

On the remand, plaintiffs' attorney moved for an order compelling disclosure of the informer's name. On the return day plaintiffs relied only upon argument. No affidavits or evidence were offered. The defendants produced two witnesses, Stephen Champi, Somerset County Prosecutor and president of the New Jersey County Prosecutors' Association, and defendant Dunne. Mr. Champi testified to the importance of informers to law enforcement officers in the investigation and apprehension of criminals in gambling. He said that if the informant in this case were identified, this informant would thereafter refuse to cooperate with the police and other informers would follow in those footsteps. Emphasizing that informers insist on remaining completely anonymous, he testified that all 21 county prosecutors had discussed this case and shared these opinions.

Defendant Dunne, who had been in the Morris County Prosecutor's Office since 1965, testified to the importance of informers in the Confidential Intelligence Unit which he headed. This Unit dealt with gambling, municipal corruption and organized crime. In about 90% of its investigations informants were used. Confidentiality of their identity was essential. Their arrangements provided that, if the informant's testimony were needed, the prosecution would be dropped. Dunne testified that divulging the informant's name in this case would be devastating to police enforcement because it would eliminate that individual source as well as other sources of information.

The defendants also offered into evidence the deposition of Paul Cashen. That deposition disclosed that when the three defendants, Dunne, Bickley and Spann, and a fourth detective came to his home on June 19, 1970, Mr. Cashen was cutting the grass. He was escorted into the house. None of the three defendants touched him. There was no damage to the premises. He had not made any monetary expenditures or

incurred any expenses as a result of the search. Mr. Cashen complained about comments of neighbors and acquaintances, but these apparently arose because of the newspaper publicity about this suit. He also testified that he had no reason to believe any of the defendants had been motivated by a malicious intent toward him.

In his deposition Mr. Cashen explained how it came about that he engaged his attorney, Mr. Accardi. Mr. Accardi, who represented some individuals who had been accused of gambling violations, had telephoned Mr. Cashen, whom he had not known previously, and arranged to see him. Mr. Accardi desired that Mr. Cashen appear as a witness in the criminal proceeding involving his clients. Between three and six months later, Mr. Cashen phoned Mr. Accardi to represent him with respect to the search. Mr. Cashen asserted he had no retainer agreement with Mr. Accardi except that this case had been taken on a contingency basis. Mr. Cashen had not agreed to pay any costs of litigation, even though the litigation might not be successful. He did not know who had been bearing those costs.

Finding that no sound judicial policy would be advanced by protecting the informant, the trial court held the defendants must disclose the informer's identity. 143 *N. J. Super.* 560 (1976). The Appellate Division approved the trial court's approach and affirmed in an opinion reported at 150 *N. J. Super.* 500 (1977).

We are satisfied that neither lower tribunal properly followed the guidelines carefully enunciated by Justice Pashman. In the absence of any evidence to the contrary, the presumption protecting the informer's privilege should be upheld. The party seeking disclosure must make a "substantial showing of a need" for the disclosure. *State v. Oliver,* 50 *N. J.* 39, 47 (1967). We afforded plaintiffs the opportunity to move and support their motion with a showing of "all the facts bearing * * * on the possible unfairness to plaintiffs of denying disclosure of the identity of the informer * * *."

The plaintiffs chose to present no evidence to support their position.

Furthermore, in the balancing process, it must be remembered that the plaintiffs seek this information in connection with a civil action for damages. Those damages do not appear to be significant. On the other hand, the uncontradicted evidence confirmed the importance and necessity of the assistance of informers in ferreting out activities of organized crime and municipal corruption and indicated the disastrous effect of disclosing the informant's name in this case.

Neither the trial court nor the Appellate Division properly applied the criteria and standards of *Cashen v. Spann*, 66 *N. J.* 541. When due consideration is given to the presumption and all the other pertinent facts, we are satisfied that on balance the informer's identity should not be disclosed.

Reversed and remanded.

CONFORD, P. J. A. D. (temporarily assigned), dissenting. The obviousness of plaintiffs' need for revelation of the identity of the informer is so clear that the interests of justice dictate granting their request. Only by examining the informer under oath will plaintiffs be able to establish whether or not the flagrant falsities in the affidavit supporting the application for the search warrant were deliberate lies on the part of the affiant, the defendant Bickley. If they were, it is manifest that plaintiffs will be in a much stronger position to assert at trial a claim for substantial or punitive damages. *Cf. Bivens v. Six Unknown Fed. Narcotics Agents*, 403 *U. S.* 388, 91 *S. Ct.* 1999, 29 *L. Ed.* 2d 619 (1971). It is even possible that without proof of the deliberate falsity of the affidavit a jury might exculpate defendants entirely as having acted in good faith on mistaken information.

I do not agree with the Court's statement that plaintiffs' damages "do not appear to be significant." (p. 143). A breach of privacy in the home through an unconstitutionally illegal search by law enforcement agents *per se* war-

rants substantial damages. See 3 *Restatement, Torts* 2d, § 652B at 378 (1977). At least that much is called for on the occasion of such a deliberate and knowing violation of both the state and federal constitutions that, if criminal evidence had been uncovered thereby, it would be suppressed in a criminal trial of an accused under the exclusionary rule. See *Franks v. Delaware,* —— *U. S.* ——, 98 *S. Ct.* 2674, 57 *L. Ed.* 2d 667 (1978). And the probability is that the damages awarded would be magnified if the illegality of the search had been knowing and deliberate on the part of the defendant law enforcement officers. Plaintiffs are entitled to the opportunity to ascertain the facts.

Duly taking into account all the relevant factors discussed in our opinion in *Cashen v. Spann,* 66 *N. J.* 541, *cert.* den. 423 *U. S.* 829, 96 *S. Ct.* 48, 46 *L. Ed.* 2d 46 (1975), it is my view that the Law Division and the Appellate Division correctly concluded that "a fair determination of the issues" calls for revelation to plaintiffs by defendants of the name of the informer. *Evid. R.* 36: *N. J. S. A.* 2A:84A–28. *Cf. Roviaro v. United States,* 353 *U. S.* 53, 77 *S. Ct.* 623, 1 *L. Ed.* 2d 639 (1957).

*For reversal and remandment*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—Judge CONFORD—1.