# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Linda Donovan Decker

v.

Jonathan A. Watson,
John Doe,
and Richard Roe

### Case No. Law No. 51283

Donna Decker Flory

v.

Jonathan A. Watson,
John Doe,
and Richard Roe

### Case No. Law No. 51284

### February 12, 2001

BY JUDGE LEROY F. MILLETTE, JR.

This cause is before the Court upon defendants' Motion for a Protective Order and plaintiffs' Motion to Overrule Privilege and to Compel Testimony and Memoranda submitted and the arguments of counsel. For purposes of this letter opinion only, the Court will consolidate the two above-referenced cases. It is the ruling of the Court that the defendants' Motion for a Protective Order be granted on the basis of the privilege afforded criminal investigative files and records. Subsequently, it is also the ruling of the Court that the plaintiffs' Motion to Overrule Privilege and to Compel Testimony be denied on the same basis.

## I. *Facts*

The plaintiffs, Linda Donovan Decker and Donna Decker Flory, are employed by the Dr. William E. S. Flory Small Business Development Center, Inc. ("the Flory Center"), a Small Business Development Center. Jonathan A. Watson, a defendant, is employed as a Special Agent Accountant with the Virginia State Police. The plaintiffs have sued Watson, along with the defendants John Doe and Richard Roe, for the intentional tort of defamation.

On March 23, 1999, Watson obtained a search warrant from a magistrate in Prince William County to search the residence of Linda Donovan Decker and the offices of the Flory Center. An affidavit, sworn to by Watson before the magistrate, provided the basis for this search warrant. This affidavit contained statements made by the defendants John Doe and Richard Roe to Watson. Watson, in seeking the search warrant, stated that, "sufficient probable cause exists to believe that Linda Decker and Donna Decker Flory have converted and are converting, to their own use, funds and assets of the Dr. William E. S. Flory Small Business Development Center, Incorporated, in violation of § 18.2-111 of the Code of Virginia."

On March 24, 1999, Watson, along with other police officers, executed the search warrant, searching Decker's residence and the offices of the Flory Center and seizing various records from both places. The Prince William County Circuit Court, upon an *ex parte* motion of the Commonwealth's Attorney, sealed Watson's affidavit for the search warrant until further order of the Court, but not later than July 1, 1999. After July 1, 1999, the Court unsealed the affidavit; thereafter, members of the press obtained copies of the affidavit. To date, no criminal charges have been brought against the plaintiffs.

Each plaintiff filed a separate Motion for Judgment, naming Watson, Doe, and Roe as defendants. The plaintiffs allege that defendants Doe and Roe made defamatory statements about them to defendant Watson. Similarly, the plaintiffs allege that defendant Watson made defamatory statements about them in the affidavit he swore out in order to obtain a search warrant for the plaintiffs' residence and place of business. In prosecuting their cases, the plaintiffs served defendant Watson with interrogatories and requests for production of documents. These discovery requests sought, in part, the identities of Doe and Roe and the production of the Virginia State Police's criminal investigative files concerning the suspected embezzlement from the Flory Center.

After hearing oral argument on the defendant Watson's Demurrer, the Court sustained the Demurrer and dismissed the plaintiffs' Motions for

Judgment with prejudice. In dismissing the plaintiffs' actions against defendant Watson, the Court held that the allegedly defamatory statements made by defendant Watson in his "Affidavit for Search Warrant" were absolutely privileged communications.

The Court then, based upon defendants' motion, quashed a deposition subpoena *duces tecum* served upon defendant Watson. At that time, the Court also directed defendant Watson to produce the original investigative materials for the Court's *in camera* inspection, which subsequently occurred. The following two motions remain outstanding for resolution by the Court: (1) the defendant Watson's Motion for a Protective Order and (2) the plaintiffs' Motions to Overrule Privilege and to Compel Testimony.

In seeking a protective order, the defendant Watson prays that the Court prohibit the disclosure of the investigative files of the Virginia Department of State Police and of any witness names contained within those files. In his motion, defendant Watson argues that these records are part of a criminal investigation and, therefore, confidential and privileged. In response, the plaintiffs argue in their Motions to Overrule Privilege and to Compel Testimony that an exception to the informer's privilege applies, namely that the disclosure of the identities of Doe and Roe are essential to a fair determination of the plaintiffs' actions for defamation. Additionally, the plaintiffs contend that the defendant's assertion of an automatic privilege against disclosure of the criminal investigative files in question is erroneous. The Court, argues the plaintiffs, should make a determination as to whether the information being sought in the instant cases is relevant and material to the defamation actions.

## II. *Issues*

In resolving the remaining motions in this case, the Court must decide whether the discovery requested by the plaintiffs, specifically the identities of Doe and Roe and the criminal investigative files of the Virginia State Police, is privileged and, therefore, protected under Rule 4:1(b) of the Rules of the Supreme Court of Virginia.

## III. *Discussion*

Rule 4:1(b) of the Rules of the Supreme Court of Virginia states that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." If the discovery being sought by the plaintiffs here is found to be privileged, then pursuant to Rule 4:1(b), the plaintiffs are not entitled to such discovery. Consequently, the

proper remedy would be for the Court to enter a protective order, prohibiting the disclosure of any of the requested information.

The interrogatories and requests for production of documents propounded by the plaintiffs on the defendant seek information that is contained in the criminal investigative files of the Virginia State Police, specifically the investigation of the embezzlement of funds from the Flory Center. The Commonwealth of Virginia has maintained a long-standing public policy that criminal investigative files are privileged documents which are neither to be disclosed, nor subject to the rules of discovery. This public policy is manifest in both jurisprudence and statutory provisions.

In *Watkins v. Republic Lumber & Bldg. Supply Co.*, 2 Va. Cir. 463 (1978), the defendant served a subpoena *duces tecum* on the Superintendent of the Department of Virginia State Police ("Department") for the production of various documents concerning the investigation and prosecution of the plaintiff for grand larceny. In ruling on the Attorney General's (on behalf of the Department) motion to quash the subpoena, the trial court ordered that the Department produce the requested documents to the court for an *in camera* inspection. In ordering such an inspection, the court stated that it would determine what in the investigative files was privileged and what was not privileged. The court added that the Department and Commonwealth's Attorney could black out the names of informers because those were found to be privileged.

On appeal, the Supreme Court of Virginia reversed the *Watkins* court's ruling, issuing the writ of prohibition petitioned for by the Department. *In re Commonwealth*, 41 Va. Cir. 571 (Va. 1978). The Court ordered the trial court to "refrain and desist from enforcing any order requiring the petitioner to disclose its investigative files concerning John P. Watkins, Jr., or any other person." The writ of prohibition granted by the Supreme Court is a clear confirmation of the public policy that the criminal investigative files of the police should be afforded an absolute privilege against disclosure. The Court had an opportunity to affirm the trial court's decision to conduct an *in camera* inspection of the documents in question, thereby clearing the way for possible disclosure of the investigative files. Instead, the Court issued a resounding message: the trial court was to issue no orders, which would create even a potential disclosure of the investigative files.

Further endorsement of the *In re Commonwealth* decision of the Supreme Court of Virginia is found in a Stafford County Circuit Court decision cited by the Defendants. *Paula K. Johnson v. Commonwealth of Virginia et al.*,

Case No. 99-191 (Stafford County Circuit Court 2000)▐ In the *Johnson* case, a plaintiff, in suing the University of Virginia Hospital and seventeen other defendants, sought to obtain criminal investigative records. The University of Virginia Police Department filed a Motion to Quash the plaintiff's subpoena *duces tecum*. The circuit court granted the motion, finding the criminal investigative files and records to be privileged and protected from disclosure.

Virginia courts have assuredly employed the public policy that criminal investigative files are privileged as a basis for their nondisclosure rulings. Although no Virginia court has explicitly stated the reasons behind this policy, a Massachusetts court, faced with a similar request to disclose investigative materials, artfully stated the following reasons for prohibiting such disclosure:

> the avoidance of premature disclosure of the Commonwealth's case prior to trial, the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of the initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions.

*Bougas v. Chief of Police of Lexington*, 371 Mass. 59, 354 N.E.2d 872 (1976).

This public policy, whereby criminal investigative files and records are regarded as privileged, and not open to discovery, is recognized in several other jurisdictions. In *Cashen v. Spann*, 77 N.J. 138, 389 A.2d 969 (1978), a defamation case against police officers and an informant, the plaintiffs claimed that the police used false information from a confidential citizen informant to procure a search warrant for the plaintiffs' home. The trial court ordered that the identity of the informant be disclosed to the plaintiff, finding such information to be essential to the fair determination of the issues in the case. However, the Supreme Court of New Jersey overturned the lower court and held that the informant's identity should not be disclosed because of the importance of protecting the identities of informants. *See Bougas*, 371 Mass. 59, 354 N.E.2d 872 (1976) (prohibited disclosure of investigative materials because of policy that encourages citizens to submit information in investigations and promotes candor of police officers in making observations); *State v. Johnson*, 284 So. 2d 198 (Fla. 1973) (found that police reports would

not be made readily available because of the possible leads to other cases and other suspects contained therein); *Schuster v. City of New York*, 203 N.Y.S.2d 278, 25 Misc. 2d 916 (Sup. Ct. 1960) (determined police records to be confidential and secret, and that disclosure would be prejudicial to public interest); *Whittle v. Munshower*, 221 Md. 258, 155 A.2d 670 (1959), *cert. denied* 362 U.S. 981, 4 L. Ed. 2d 1016, 80 S. Ct. 1069 (1960) (denied disclosure of state police files to administrator of a decedent's estate undertaking to overturn charges against decedent).

In addition to case law supporting the policy of nondisclosure of criminal investigative files, there are also analogous statutory provisions, which support this policy. For example, the Virginia Freedom of Information Act ("FOIA") specifically excludes from its disclosure provisions "complaints, memoranda, correspondence and evidence relating to a criminal investigation or prosecution." Va. Code Ann. § 2.1-342.2(F)(1). As argued by the defendants, the apparent intention of the Virginia General Assembly in enacting such a statute is to protect criminal investigative files from being disclosed.

Finally, Rule 3A:11(b)(2) of the Rules of the Supreme Court of Virginia further demonstrates the Court's endorsement of the protection of criminal investigative files. This rule, in stipulating what may be discovered in criminal cases, does not allow for the discovery of "statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth or of reports, memoranda or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case." Va. Sup. Ct. Rule 3A:11(b)(2). The Court relied on this rule in deciding the case of *Bellfield v. Commonwealth*, 215 Va. 303, 208 S.E.2d 771 (1974), a criminal case in which the trial court, upon a motion by the defense for "the production of police notes," prohibited the disclosure of witness statements made to the police. The Supreme Court of Virginia, in affirming the trial court's ruling, opined the following:

> While we are vigilant to protect the defendant's right to a fair trial, we must likewise be vigilant in maintaining the confidence of our citizens in the police and prosecuting officers. It is only through the testimony of victims of crime and other public-spirited citizens that the criminal laws of the Commonwealth may be fairly and uniformly enforced.

*Bellfield*, 215 Va. at 307.

The Defendants, arguing again by analogy, point out that it would be illogical for the Supreme Court to prohibit a criminal defendant from discovering information contained in criminal investigative files, but permit

that same defendant to discover such files through a civil proceeding. In support of their argument, the Defendants cite *Paul Narang v. Virginia State Lottery and John Doe*, Case No. 013CL97000505-00 (Arlington County Circuit Court 1997), a case characterized by these facts. The circuit court granted the defendants' Motions to Quash and to Abate the civil proceeding and prevented the disclosure of the requested criminal investigative files.

The plaintiffs' rebuttal concentrates on the doctrine of the informer's privilege and the exceptions to the privilege. In *Rovario v. United States*, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), the seminal case on the informer's privilege, the United States Supreme Court states that "where disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way." *Rovario*, 353 U.S. at 60-61. The plaintiffs argue that because the identities of Doe and Roe are essential to a fair determination of their defamation actions, the informer's privilege must yield. Nonetheless, it is not the informer's privilege that controls in this case. Rather, it is the privilege afforded information contained in criminal investigative files that determines whether the discovery of the files in question is permissible. Based on the previously stated reasons, such as the encouragement of citizens to turn over information to the police, the public policy of maintaining the confidentiality of criminal investigative files outweighs any need of the plaintiffs to know the identities of Doe and Roe.

## IV. *Conclusion*

Virginia courts and the General Assembly have consistently recognized and upheld the public policy that criminal investigative records and files are privileged and are not to be disclosed. In order to insure the success of our criminal justice system, it is imperative that private citizens be able to go to the police with any information potentially pertinent to a criminal inquiry. These private citizens, as informants, should feel safe from both physical harm and retaliatory litigation. The most effective way of guaranteeing such safety is by maintaining the confidentiality and secretiveness of criminal investigative records.

This public policy is also necessary because it enables police officers and prosecutors to execute the duties of their jobs with greater effectiveness. It only follows that the result of such efficacy is the increased safety of the citizens of the Commonwealth. In order for police officers to be completely forthcoming in their observations and conclusions, they must be given assurance that such information will be kept confidential. Similarly, the

investigative techniques, procedures, and sources of information of both police officers and prosecutors should be afforded a certain amount of protection.

The Court grants the defendants' Motion for a Protective Order and denies the plaintiffs' Motions to Overrule Privilege and to Compel Testimony, holding that the criminal investigative records of the Virginia State Police are privileged and, therefore, protected from discovery under Rule 4:1(b) of the Rules of the Supreme Court of Virginia. Counsel for the defendant is directed to prepare and circulate for endorsement an Order consistent with this letter opinion. Included in this Order should be a provision directing the immediate return of the documents in question to the Virginia State Police, but with the caveat that such documents shall be maintained by the police until the case is fully resolved.