## CIRCUIT COURT OF FAIRFAX COUNTY

Maura Harrington

    v.

Edwin C. Roessler, Jr., *et al.*

December 22, 2014

Case No. 2014-11477

BY JUDGE RANDY I. BELLOWS

Before the Court is the Plaintiff's Motion to Overrule Defendant Edwin C. Roessler, Jr's Objections to Plaintiff's First Request for Production of Documents and to Compel Production of the requested documents. Chief Roessler is the Chief of the Fairfax County Police Department (hereafter FCPD). The Plaintiff's Motion only concerns those document requests where the objection raised by Chief Roessler is: (1) that there is an ongoing federal criminal investigation into the shooting death of John Geer; (2) criminal investigative files are privileged; and/or (3) executive privilege.

The Plaintiff states that there are numerous document requests that are objected to *solely* on one or more of these three grounds. These are listed as 1-8, 12-37, 39-41, 43-49, 51-52, 54-61, 64-86, 91-92, 105-109, and 111-112. Plaintiff's memorandum in support of her Motion To Overrule Defendant Roessler's privilege objections and compel responses to Plaintiff's first request for production of documents (hereafter "Plaintiff's Memorandum"), at n. 1. The Court has reviewed each of these document requests and, as the Defendant notes in his pleading, four of the document requests are also subject to other objections. These are 8, 79, 80, and 82. The Plaintiff has not asked this Court at this time to resolve discovery requests subject to other objections. *See* footnote 1 of Plaintiff's Memorandum ("The remaining objections may be subject to a separate motion."). The Court will resolve these additional objections when and if called upon to do so. Therefore, this letter opinion and order addresses only the following document requests: 1-7, 12-37, 39-41, 43-49, 51-52, 54-61, 64-78, 81, 83-86, 91-92, 105-109, and 111-112.

Except as described below, the Plaintiff's Motion to Compel and to Overrule Objections is granted.

This opinion and order addresses only the first two objections to disclosure asserted by Chief Roessler. The Plaintiff treats these two objections as one. The Plaintiff characterizes the Defendant's position as follows: "[The Defendant claims] `that there is an ongoing federal criminal investigation' and, *therefore*, the `files are privileged'." *See* Plaintiff's Memorandum, n. 1 (emphasis added). In fact, the Defendant is actually making two separate objections. *See, e.g.*, its response to Request No. 1: "To the extent such documents are part of the criminal investigative file, Chief Roessler objects because there is an ongoing federal criminal investigation into the shooting death of John Geer *and* because criminal investigative files are privileged." Defendant Colonel Edwin C. Roessler, Jr.'s objections and responses to Plaintiff's first request for production of documents, *1 (emphasis added). The County does acknowledge some connection between the status of the investigation and the assertion of the privilege. *See* Defendant Colonel Edwin C. Roessler, Jr.'s opposition to Plaintiff's Motion To Overrule Objections and Compel Responses (hereafter "Defendant's Opposition"), *2 ("Unlike private citizens whose exoneration in the investigative process may never be publicly known, the FCPD's policies also provide that the name of the officer involved in a deadly force incident may be released *once a prosecutorial decision has been made* and when adequate safety measures are in place to ensure the safety of the officer and his or her family, even if the officer was exonerated.") (emphasis added).

This opinion and order does not address the third objection to disclosure, the, claim of executive privilege. This is for three reasons.

First, the executive privilege claim applies only to a limited category of documents, specifically those created in the course of the internal administrative investigation which began sometime after September 2, 2014.

According to the County Attorney, the internal administrative investigation was commenced after service of the lawsuit on Chief Roessler. *See* Footnote 4 of the Defendant's Opposition to the Motion to Compel. Since the lawsuit was filed on September 2, 2014, the internal administrative investigation was commenced at some point on or after September 2, 2014. Therefore, any documents created prior to September 2, 2014, are not part of the internal administrative investigation and are not subject to the executive privilege claim.

Second, at oral argument the Assistant County Attorney represented to the Court that the internal investigation is ongoing.

Third, the Court would almost certainly be unable to resolve the executive privilege issue without conducting an *in camera* review of some or all of the specific documents at issue. Thus, resolution of this issue will require more extended consideration by the Court and additional proceedings.

In contrast, the Court is ready at this time to resolve the Motion To Compel as it applies to the documents which the County asserts are part of the federal criminal investigation and subject to the criminal investigative

file privilege. This involves the vast majority of the document requests. The Court sees no purpose in delaying issuance of a decision that resolves most of the documents that have been requested in discovery. As to the claim of executive privilege and its applicability to the ongoing internal administrative investigation, the Court neither grants nor denies the Motion To Compel at this time, pending further proceedings.

For the reasons stated below, the Court finds for the Plaintiff as to most of the document requests and orders production of the requested documents within thirty days.

## I. Does a Criminal Investigative File Privilege Presently Exist in Virginia?

The first question to resolve is whether a criminal investigative file privilege presently exists in Virginia. The use of the word "presently" is important because the Plaintiff argues that, even if a criminal investigative file privilege did exist prior to 2014, it no longer exists in light of new statutory language recently added to the Virginia Freedom of Information Act (FOIA) by the General Assembly.

The Virginia Freedom of Information Act provides public bodies with the authority to disclose or withhold from disclosure criminal investigative files, defined as any documents and information, including complaints, court orders, memoranda, notes, diagrams, maps, photographs, correspondence, reports, witness statements, and evidence relating to a criminal investigation or prosecution. . . ." *See* Va. Code § 2.2-3706(A)(2)(a) (2014). In 2014, however, the General Assembly added Virginia Code § 2.2-3703.1, which reads in its entirety as follows:

> Nothing contained in this chapter shall have any bearing upon disclosures required to be made pursuant to any court order or subpoena. No discretionary exemption from mandatory disclosure shall be construed to make records covered by such discretionary exemption privileged under the rules of discovery, unless disclosure is otherwise prohibited by law.

The Plaintiff argues that this means a criminal investigative file privilege no longer exists. The Defendant argues that the privilege still exists.

This presents a matter of first impression, which can be posed as follows: Does the criminal investigative file privilege survive the enactment of Virginia Code § 2.2-3703.1? The Court holds that the privilege survives. FOIA did not create the privilege and FOIA does not now destroy it.

While it is true that a number of Virginia cases in the course of recognizing the existence of a criminal investigative file privilege have cited to the provisions of FOIA that permit the withholding of criminal investigative files, *see, e.g., Decker v. Watson*, 54 Va. Cir. 493, 498, 2001

Va. Cir. LEXIS 19 (2001), and *Singh v. Agbemble*, 77 Va. Cir, 242, 244, 2008 Va. Cir. LEXIS 150 (2008), it does not follow that the privilege's existence is based solely or even predominantly on language in FOIA or that the privilege's survival depends on the FOIA provisions remaining unchanged. Now-Justice Millette's opinion in *Decker* illustrates this. Justice Millette stated: "Virginia courts and the General Assembly have consistently recognized and upheld the public policy that criminal investigative records and files are privileged and are not to be disclosed." *Decker*, 54 Va. At 499. In reaching this conclusion, Justice Millette noted that "[i]n addition to case law supporting the policy of nondisclosure of criminal investigative files, there are also analogous statutory provisions, which support this policy." *Id.*, at 498. One of the provisions he cited was FOIA. Similarly, Judge Ney in *Singh*, although relying on FOIA as "dispositive" authority to grant a motion to quash a subpoena *duces tecum*, noted that "[p]revious decisions and orders from this Circuit Court have repeatedly recognized that police investigatory files are privileged." *Singh*, 77 Va. Cir. at 244.

In sum, while § 2.2-3703.1 eliminates FOIA in the context of litigation as a basis to assert a privilege against disclosure of criminal investigative files, it does not abolish the criminal investigative file privilege itself.

## II. *Even If a Criminal Investigative File Privilege Presently Exists in Virginia, Does It Apply in the Instant Case?*

The fact that this Court concludes that a criminal investigative file privilege still exists in Virginia, even after the 2014 addition to FOIA, does not end the inquiry. This is because of the unusual posture of the instant case, *i.e.*, the entity seeking to assert the criminal investigative file privilege is no longer responsible for any aspect of the criminal investigation and the entity that is now solely responsible for the criminal investigation has made it clear that it has taken no step to discourage the custodian of the criminal investigative files from disclosure of most of the files at issue.

The County expresses the concern that the integrity of the criminal investigation could be compromised by disclosure of investigative records prior to the conclusion of the criminal investigation. The County, however, is not conducting the criminal investigation, nor is that investigation being conducted by the Office of the Fairfax Commonwealth's Attorney. Rather, it is undisputed that the only criminal investigation that is now being conducted is an investigation by the United States Department of Justice. Significantly, the Department of Justice has not sought to intervene or lodge any objection with respect to the pending Motion to Compel. Moreover, and even more significantly, the Department of Justice has expressed its official position with regard to disclosure of the records of the Fairfax County Police Department.

In a letter to Senator Charles E. Grassley, Assistant Attorney General Peter J. Kadzik responded as follows to a question posed by Senator Grassley:

> Question: Has your office instructed FCPD to refrain from disclosing information about this case?
>
> Answer: The FCPD was not asked to refrain from disclosing information about the shooting. However, the FCPD was advised not to disclose information about the federal investigation.

At oral argument, the County Attorney confirmed that this statement is consistent with the instructions that the Department of Justice has given the FCPD. Chief Roessler, in a letter to Senator Grassley dated December 1, 2014, made a similar representation: "The [Fairfax County Police] Department has received no instruction from the U.S. Attorney's Office to refrain from disclosing information." Plaintiff's Memorandum, Ex. D. Thus, the investigative agency solely responsible for the criminal investigation has drawn a distinction between information related to the shooting and information related to the federal investigation. In light of the fact that the agency actually responsible for the criminal investigation has interposed no objection to disclosure of information relating to the shooting death of John Geer, nor asked the FCPD to refrain from disclosing such information, the Court rejects the applicability of a criminal investigative file privilege in the instant case, except as it applies to the federal investigation of the shooting death of John Geer.

This brings the Court to the question of what constitutes the "federal investigation." The Assistant County Attorney makes the argument that all information related to the shooting constitutes information related to the federal investigation and, thus, no information ought to be produced at this time in order to honor the request of the Department of Justice. The Court rejects that interpretation. To accept the County's view would be to define the distinction drawn by the Department of Justice between "the shooting" and the "federal investigation" out of existence and render that portion of the Department's letter meaningless. If the Department of Justice had meant to equate "the shooting" with the "federal investigation," it could have said so. Instead, it distinguished the two, and the Court finds that distinction to be meaningful.

Since the Department of Justice's letter does not define "federal investigation," the Court (for purposes of this order only) defines it as follows: *Documents dated on or after January 7, 2014, that were created by federal investigators or other Department of Justice personnel or at the direction of such federal investigators or personnel, or that relate to any federal grand jury proceedings that may exist in connection with the shooting death of John Geer.* According to Assistant Attorney General

Kadzik's letter, January 7, 2014, is the date upon which the Fairfax County Commonwealth's Attorney referred the matter to the United States Attorney's Office for the Eastern District of Virginia.

As to these documents, which the Court will refer to collectively as "federal investigation documents," it is appropriate that the Motion To Compel be denied at this time and the County's Objection to Production sustained. Once the federal investigation has concluded, the Motion To Compel may be renewed as it applies to those documents not already produced pursuant to today's opinion and order.

Finally, and with regard to the internal administrative investigation, the Court will permit the County, for the time being only, to withhold from production documents created during, and as part of, the ongoing internal investigation. To be absolutely clear, the Court is neither granting nor denying the Motion To Compel production of the internal administrative investigation documents but, rather, reserving judgment pending further proceedings with regard to the claim of executive privilege. Further, as stated above, any documents created prior to September 2, 2014, are not part of the internal administrative investigation in view of the County's representation that the internal administrative investigation was not commenced until Chief Roessler was served with the instant lawsuit.

In concluding that the Motion to Compel ought to be granted, the Court would note that Plaintiff argues that, in the event the Court finds that the criminal investigative file privilege exists, "it should find an exception to the rule where it is the police conduct that is the subject of the investigation." *See* Plaintiffs Memorandum, n. 8. The Court need not reach this argument in light of its judgment that the Motion to Compel should be granted for the reasons stated above.

### III. *The Specific Requests for Production of Documents*

In light of the foregoing, the Court issues the following orders:

Requests for production of documents that are granted, except to the extent they constitute federal investigation documents or internal administrative investigation documents:[5]

1 (Documents relating to the incident);
2 (Documents relating to FCPD employees present at the scene);
3 (911 calls, police radio calls, police telephone calls);
4 (Reports regarding the incident);
5 (Witness statements);
6 (Videos and other recordings of statements);
7 (Documents reflecting FCPD vehicle numbers at the scene);

---

[5] For ease of reference, the Court has included brief summaries of the requested material. These are not intended to replace the actual language of the request, which is controlling.

12 (FCPD officers' notes);

13 (CAD reports);

14 (Documents describing statements between John Geer and FCPD personnel);

15 (Documents regarding statements made by John Geer);

16 (Documents regarding statements made by John Doe I, John Doe II, or any other FCPD member to John Geer);

17 (Documents describing statements made by John Geer to FCPD);

18 (Documents describing actions of John Geer);

19 (Documents related to the shooting of John Geer);

20 (Documents regarding statements made by John Doe I, II, and III, or Chief Roessler regarding the incident);

21 (Documents regarding the participation or suggested participation of a trained negotiator);

22 (Documents reflecting communications with the Crisis Negotiation Team);

23 (Documents reflecting communications with FCPD personnel regarding the use of force during the incident);

24 (Documents regarding statements made by any member of the FCPD present at the incident);

25 (Documents reflecting the identity and location of all FCPD officers at the incident);

26 (Documents reflecting the identity and location of all FCPD officials not at the incident who were in communication with FCPD officers at the incident);

27 (Documents reflecting the identity and assignment of all FCPD officers at the incident);

28 (Documents reflecting communication devices in the possession of, or accessible to, FCPD officers at the incident);

28 (Documents reflecting all communication and recording devices at the incident); There are two requests numbered 28. Both are granted.

29 (Documents reflecting access to communication devices, surveillance equipment, and recorded listening devices available to the FCPD at the incident, and their use during the incident);

30 (Documents regarding weather conditions and ambient lighting conditions);

31 (Documents regarding any non-FCPD individuals at the incident);

32 (Documents regarding all FCPD equipment at the incident);

33 (Documents regarding the make, model, and caliber of the weapon used by John Doe I);

34 (Documents regarding communications and actions associated with providing medical treatment to John Geer after he was shot);

35 (Documents regarding communications and actions taken to enter the Geer residence after the shooting of John Geer);

36 (Documents related to the location of John Doe I's trigger finger during the incident);

37 (Documents related to whether the decocker on John Doe I's weapon was engaged during the incident);

39 (Photographs, videos, and audio tapes regarding the incident);

40 (Audio and video tape recordings and photographs relating to the incident taken by FCPD personnel or possessed by FCPD personnel);

41 (Audio and video tape recordings and photographs taken by non-FCPD personnel that have been in the possession of FCPD);

43 (Chain of custody documents for recording devices and the names of FCPD personnel and their reports who reviewed the material);

44 (Documents related to medical attention or treatment provided to John Geer at the scene);

45 (Documents related to statements made by FCPD personnel regarding the provision of medical treatment to John Geer);

46 (Documents related to qualifications of individuals who provided medical treatment to John Geer);

47 (Documents related to the transportation of John Geer to the hospital or medical examiner);

48 (Documents related to John Geer's being pronounced dead at the scene);

49 (Documents related to FCPD's making entry into the Geer residence);

51 (Documents related to forensic examinations) to the extent the County possesses documents relating to testing or examinations conducted by the Virginia Department of Forensic Science, the request is granted; to the extent that the County is not in possession of such documents, a subpoena *duces tecum* may be required;

52 (Documents related to testing or examination of John Doe I after the shooting)

54 (Documents related to testing of audio or visual recordings, photographs, fingerprint testing, or gunshot residue);

55 (Documents related to reconstruction of the shooting of John Geer);

56 (Documents related to blood pattern examination or testing regarding the incident);

57 (Documents regarding trace evidence, chemical testing, and items collected at scene and in the Geer residence);

58 (Documents related to crime scene investigation);

59 (Documents related to any statements taken regarding the incident);

60 (Photographs, video and audio tapes, and other electronic images regarding the shooting and its aftermath);

61 (Documents identifying persons present at the scene, including civilian witnesses);

64 (Documents relating to the appearance of John Doe I at the scene);

65 (Documents relating to the appearance of all FCPD personnel at the scene);

66 (Documents relating to the collection of weapons at the scene);

66 (Documents relating to the seizure of tangible items from Geer residence) there are two Requests numbered 66; both are granted;

67 (Documents created by CIB regarding the incident);

68 (Documents relating to participants in the CIB investigation);

69 (Documents reviewed by the CIB during its investigation);

70 (Documents related to forensic testing undertaken by CIB or reviewed by CIB);

71 (Documents relating to findings, conclusions, or recommendations of CIB regarding the incident);

72 (Documents relating to CIB supervision of investigation);

91 (John Doe I's training file, including weapons training);

92 (Documents relating to John Doe I's compliance with mandatory training regarding firearm use established by the Virginia Department of Criminal Justice Services);

105 (Photographs and other recordings made during the search of the Geer residence);

106 (Notes taken during the search of the Geer residence);

107 (Documents relating to the search of the Geer residence);

108 (Documents identifying FCPD personnel that participated in the search of the Geer residence);

109 (Documents relating to the examination and disposition of items seized from John Geer or his residence);

111 (Documents relating to any consent obtained to search the Geer residence);

112 (Documents relating to any action or activity with regard to obtaining a search warrant to search John Geer's residence or to arrest John Geer during the incident).

The following requests for production of documents are neither granted nor denied at this time, pending further resolution, because they appear to exclusively constitute internal administrative investigation documents: 73, 74, 75, 76, 77, 78, 81.

The following requests for production of documents are neither granted nor denied at this time. These requests relate to the office of the commonwealth's attorney's investigation that took place prior to the initiation of the federal investigation: 83, 84, 85, 86. The Court cannot decide these requests without a hearing at which the Commonwealth's Attorney would have the opportunity to interpose such objections as it may have and for the Court to hear further argument with respect to the relevancy of this material.

## IV. *Defendant's Request for a Protective Order*

Finally, the Court will address the Defendant's request for a protective order. Rule 4:1(c) of the Rules of the Supreme Court of Virginia provides a trial court broad authority to issue protective orders governing discovery. For "good cause shown," a court may make "any order which justice requires" to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." A trial court has "substantial latitude to fashion protective orders." *Shenandoah Publishing House, Inc. v. Fanning,* 235 Va. 253, 261 (1988) (*quoting Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).

In the instant case, the Defendant seeks a protective order to "ensure[] the integrity of the criminal and internal investigations and also safeguard[] the privacy and safety of the FCPD officers involved." Defendant's Opposition, *5. At oral argument, the Assistant County Attorney argued that the protective order was also intended to prevent the case from being tried in the press and to prevent prejudicing the pool of jurors from which a jury may eventually be selected.

As to the first argument, ensuring the integrity of the criminal and internal investigation, the Court would note again that the entity solely responsible for the criminal investigation, the United States Department of Justice, has not sought a protective order or any other relief from this Court. The Department of Justice has asked the FCPD not to disclose information concerning its federal investigation, and this Court's order is entirely consistent with that request. As to the County's concern with regard to the integrity of the internal administrative investigation, the order issued today expressly excludes discovery of the internal administrative investigation documents.

As to the second argument, safeguarding the privacy and safety of the FCPD officers involved, the Court will issue a limited protective order as further detailed below. In addition, the Court will give the County thirty days to comply with this order to permit the County to address the safety and security concerns which it raises in its pleading. *See* Defendant's Opposition, *2: "the FCPD's policies also provide that the name of the officer involved in a deadly force incident may be released once a prosecutorial decision has been made and when adequate safety measures are in place to ensure the safety of the officer and his or her family, even if the officer was exonerated."

As to the third argument raised by the County, to prevent the case from being tried in the press, the Court does not find this to be a persuasive justification for entry of a protective order.

As to the fourth and final argument, to prevent prejudice to the jury pool, this judicial circuit has had extensive experience successfully trying cases that have attracted substantial media attention. There is every reason to believe that the usual tools for preventing jury prejudice, jury questionnaires, jury instructions, a thorough jury selection process, and so on, will also suffice to insure the selection of an impartial jury in the instant case.

The protective order sought by the County is far too broad. It covers each and every document to be produced by the Fairfax County Police Department, designates every document disclosed as "For Counsel Only" or "Attorneys' Eyes Only," limits disclosure to certain "Qualified Persons" who take a prescribed oath, and goes far beyond what the Court deems necessary or appropriate in this case. The Court, therefore, issues the following limited protective order.

The Defendant may redact from its document production the home addresses, home phone numbers, work and personal cell phone numbers, work and personal email addresses, and such identifying data as social security numbers and driver's license numbers of law enforcement personnel and civilian witnesses.

*Order with Regard to Plaintiff's Motion*
*To Overrule Objections and Compel Responses*

Before the Court is the Plaintiff's Motion To Overrule Objections and Compel Responses. The Motion is resolved in accordance with the opinion letter issued today, which is hereby incorporated by reference. The Court further orders that the parties appear before the Court at 1 p.m. on February 6, 2014, for the purpose of scheduling other pending pre-trial motions and for further proceedings with respect to the document requests associated with the internal administrative investigation.